## In re NASH PHILLIPS/COPUS–HOUSTON, INC., Debtor.

### James R. CHAPMAN, Jr., Plaintiff,

v.

### CARDELL CABINETS, INC., Defendant.

No. 1–87–10362LK.
Adv. No. 90–1071LK.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

May 18, 1990.

Ken E. Mackey, Austin, Tex., for plaintiff.

R. Glen Ayers, Cox & Smith, San Antonio, Tex., for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON CARDELL CABINETS, INC.'S MOTION TO DISMISS

LARRY E. KELLY, Chief Judge.

Came on to be heard the Motion of Cardell Cabinets, Inc. ("Cardell") seeking to dismiss this adversary proceeding. The Chapter 7 trustee, James R. Chapman ("trustee") appeared in opposition. After conclusion of the argument, the court took the matter under advisement to consider the facts and legal conclusions asserted by the parties. The following represent the Findings of Fact and Conclusions of Law of the court.

FINDINGS OF FACT

1. Nash Phillips/Copus–Houston, Inc. ("NPC–H") filed a Chapter 11 bankruptcy proceeding on March 2, 1987. Two affiliated companies, Nash Phillips/Copus, Inc. ("NPC–I") and Nash Phillips/Copus–San Antonio ("NPC–SA") contemporaneously filed separate Chapter 11 cases. These cases were consolidated administratively by order of the court.

2. On October 30, 1987, NPC–H filed a notice of conversion to Chapter 7. By order of same date this court severed NPC–H from the jointly administered case of NPC–I and NPC–SA. A separate order for relief in Chapter 7 was also entered on October 30, 1987 appointing James R. Chapman as interim trustee pursuant to Code § 701.

3. At no time relevant to the issue at hand was a U.S. Trustee certified in the Western District of Texas.

4. An order setting forth the first meeting of creditors (the "341 notice") was sent out to all creditors on or about December 4, 1987. The notice informed all parties that a § 341 creditor's meeting would be held in the U.S. Bankruptcy Court in Austin, Texas on January 7, 1988 at 9:00 o'clock a.m.

5. At the 341 meeting the deputy clerk, Ms. Jane Bowman commenced the meeting as presiding officer.

6. At the 341 meeting, no party in interest sought to elect a different presiding officer. However, an effort was made to elect a trustee other than the interim trustee. Mr. Larry Allen, purporting to represent by proxy the International Brotherhood of Painters ("IBP"), Living Windows, and Big Tex Air Conditioning nominated Mr. Jim Pair of 5440 Everhart, Corpus Christi, Texas to be the trustee. No other nominations were submitted, a voice vote was held and no party in interest opposed the appointment of Mr. Jim Pair as the trustee. The specific parties actually voting were not identified, other than those represented through Mr. Allen.

7. The presiding officer prepared and filed a Proceeding Memo—§ 341 Meeting which indicated:

a. The 341 meeting was held on January 7, 1988 at 9:00 o'clock a.m.;

b. A trustee was elected by creditors;

c. The trustee election was not disputed;

d. The interim trustee Chapman, "... continued pending qualification of voters to elect trustee and pending qualification of the elected trustee"; and

e. The presiding officer noted that "Mr. Larry Allen representing the International Brotherhood of Painters nominated Mr. Jim Pair, 5540 Everhart, Corpus Christi, Texas as trustee. Voice vote held on election of trustee and passed, pending determination by court of the qualifications of the creditors to vote pursuant to 11 U.S.C. § 702."

8. On or about January 11, 1988, Ms. Jane Bowman, as presiding officer at the NPC–H 341 meeting sent a letter addressed to this court which indicated as follows:

"On January 7, 1988, at 9:00 o'clock a.m. a § 341 meeting was called in the above-referenced case ("NPC/Houston § 341 meeting"). At that time a creditor in interest in the case called for an election of a trustee other than the court-ap-

pointed interim trustee. A voice vote was held, and passed, nominating Jim Pair, 5540 Everhart, Corpus Christi, Texas as trustee. The election is qualified pending a determination of the creditor's right to vote under 11 U.S.C. § 702 and, also, pending the qualification of the trustee himself under the Local Rules and the Bankruptcy Code, and particularly, 11 U.S.C. § 321 and § 322.

Attached please find a copy of the Proceeding Memo for the § 341 meeting pursuant to Bankruptcy Rule 2003(d).

The § 341 meeting has been continued until January 21, 1988 at 1:30 o'clock p.m."

9. On or about January 19, 1988, NPC-H, Debtor filed a Notice of Dispute and Objection of Nash Phillips/Copus-Houston, Inc. to Election of Trustee, Jim Pair. Generally, the pleading objected to the appointment of Mr. Pair, argued that the requirements of Code § 702 had not been met, disputed the validity of the election, and requested the court to determine that the election was null and appoint James R. Chapman as permanent trustee for the estate.

10. The adjourned § 341 meeting was continued on January 21, 1988, at 1:30 p.m. Another Proceeding Memo—§ 341 Meeting was filed by the presiding officer which, in relevant part, stated that Mr. Larry Allen and that various other parties in interest attended, Mr. Larry Allen objected to holding the creditor's meeting until "the new trustee could be appointed" and that Mr. Eric Taube, attorney representing Texas Commerce Funding Company, "objected to Mr. Allen's objection." The presiding officer further noted at this adjourned meeting that

"It was decided in the best interest of all parties present to hold the first meeting and not continue to a future date. The presiding officer was present and the interim trustee. It was suggested that such time (sic) the court does allow an elected trustee to be appointed and such trustee qualifies according to the Bankruptcy Code, said trustee shall be allowed to conduct a 2004 examination.

Notice to the elected trustee of selection, pursuant to Bankruptcy Rule 2008 is pending. Until the elected trustee is qualified under Bankruptcy Rule 2010(b), Mr. James R. Chapman, Jr. will serve as interim trustee for purposes of conducting this creditor's meeting."

11. A hearing was scheduled by the court for February 8, 1988, on the Notice of Dispute and Objection of NPC-H to the election of the trustee Jim Pair. On that date, a number of parties appeared through attorneys Joe Martinec, James R. Chapman, Jr., Ken Mackey, Sam Hall, Roger Yokubaitis, Dale Lee, Bill Jeffers, Eric Taube, Tim Giddeon, and Steve Roberts. When the matter was called for hearing, an announcement was made by Mr. Yokubaitis that the Motion of International Brotherhood of Painters to Confirm Trustee Elected Under § 702 was being "withdrawn by movant".

12. It should be noted that no motion of the International Brotherhood of Painters to confirm a trustee has ever appeared on the docket in this case. This court has also reviewed the docket for the relevant times at issue in the NPC-I and NPC-SA case and finds no such motion filed. A copy was provided to this Court for its consideration on the issue at hand, but it does not contain any file mark either. It is possible that such a motion was originally disseminated to the parties but inadvertently not filed with the court.

13. Although Mr. Yokubaitis, acting for IBP announced a desire to withdraw "any motion" to have the election of Mr. Pair confirmed, no announcement was made for any of the other parties that had voted in favor of Mr. Pair at the 341 meeting. The only matter remaining on the docket on February 8, 1988, then was the objection of NPC-H to the purported election. No other party in interest sought to prove up the validity of the § 702 election, so NPC-H's objection was found to compel the appointment of the interim trustee as the permanent trustee. That announcement was made orally and was to be followed by a written order.

14. On the 11th day of February, 1988 this court signed an Order and Notice to Trustee of Selection and Requiring Status Report. The order was directed to the attention of Mr. James R. Chapman, and in pertinent part provided as follows:

"You have previously been notified of your selection as the interim trustee in the estate of the above-named debtor. At the 341 meeting an attempt was made by certain creditors to elect a trustee in accordance with the provisions of § 702. An objection was filed and the issues presented by that attempt were set down for a hearing of February 8, 1988. At that hearing the proponent of the § 702 election withdrew its request to have the court recognize the validity of the election and to confirm the creditor's proposed choice of a permanent trustee.

Therefore, in accordance with the applicable provisions of the Bankruptcy Code, you are *hereby notified* that you are *now* the official trustee in this case. Your former bond, as amended, remains applicable subject to further order of the court ..." (emphasis added)

15. This Order was file marked at the Clerk's Office on February 12, 1988 and entered on the docket on February 17, 1988.

16. The adversary at issue, along with approximately 30 others, was filed on February 12, 1990.

17. This Rule 12(b) Motion was filed on March 9, 1990. In pertinent part, it requests the court to strike the complaint as being barred by the statute of limitations or in the alternative as being barred by laches.

18. None of the above facts are in material dispute. At issue is the date that the trustee was appointed, which is the date that the calculation of the applicable statute of limitations is made. The positions of the litigants may be summarized quickly. The Defendant Cardell asserts that the effective date from which the trustee was appointed under § 702 is one of five alternate dates and that any one of the five choices is fatal to the timeliness of the trustee's complaint. The Defendant asserts that the date that Chapman was appointed interim trustee, predating the § 341 meeting, is the date that the two-year statute of limitations began since no alternate trustee was ever chosen. Alternatively, the Defendant argues that Chapman was appointed on January 7, 1988 at the first 341 meeting because the attempted election by creditors was not successful or further in the alternative, that Chapman was appointed on the January 21, 1988 adjourned § 341 date, since the attempted election was unsuccessful. Should the court not find any of those dates to be the effective date, Defendant argues that February 8, 1988 is the operative date of appointment, the date the hearing was scheduled on the NPC–H objection at which time the International Brotherhood of Painters withdrew its "motion" to confirm the election of an alternate trustee, thus resulting in the interim trustee being "deemed appointed" pursuant to § 702(d) of the Code. Finally, Defendant argues that the last possible date that Chapman could have been appointed in the case was February 11, 1988, the date the court signed the "Order and Notice to Trustee of Selection and Requiring Status Reports".

19. The trustee's position is that the date from which the two-year period of limitations runs is the date the court's order was formally entered on the docket, February 17, 1988.

20. The two-year statute of limitations at issue is found in Code § 546(a) which provides "an action or proceeding under § ... 547 ... may not be commenced after the earlier (1) two years *after the appointment* of a trustee under § 702 ... of this title." (emphasis added).

21. Code § 702 provides for the qualifications of creditors which are allowed to vote for trustees in subparagraph (a), and provides that the election may be held at the meeting of creditors held under § 341 in subparagraph (b). It further provides that the candidate for trustee is elected if the stated qualifications of creditors is met as provided in subparagraph (c) and subparagraph (d) provides that if a trustee is not elected under this section, then "the

interim trustee shall serve as trustee in the case." No specific procedural guidelines are given as to the mechanics of voting, interposing objections, or for the form of appointment in the event of a disputed election.

22. Bankruptcy Rule 2003(b) provides for the order of business at the 341 meeting. In pertinent part, the clerk presides at the meeting of creditors unless the court designates a different person or the creditors who may vote for a trustee designate a different person. Subparagraph (d) of Bankruptcy Rule 2003 provides:

> "The presiding officer shall transmit to the court the name and address of any person elected trustee or entity elected a member of the creditors committee. If an election is disputed, the presiding officer shall promptly inform the court in writing that a dispute exists. *Pending disposition by the court* of a disputed election for trustee, the interim trustee shall continue in office. If no motion for the resolution of such election dispute is made to the court within ten days after the date of the creditor's meeting, the interim trustee shall serve as trustee in the case." (emphasis added).

23. Although the presiding officer indicated in the January 7, 1988 Proceeding Memo that the election was not disputed, her notes reflect that the court had to determine the qualifications of the creditors right to vote. NPC–H also filed an objection and request for the court to resolve the election dispute. Since the time afforded for filing a motion under Rule 2003(d) is less than 11 days, the court finds that the notice of dispute and objection of NPC–H to the election of the trustee was timely filed pursuant to Bankruptcy Rule 9006.

24. After the January 7, 1988 meeting this court was then confronted with an election which was in serious dispute and for which timely request had been made for resolution by the court.

## DISCUSSION

1. Other Bankruptcy Rules are relevant to the issue at hand.

a. Bankruptcy Rule 9014 provides, in pertinent part as follows:

> "In a contested matter in a case under the Code not otherwise governed by these Rules, relief shall be requested by Motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion ..."

b. Bankruptcy Rule 9021, entitled Entry of Judgment, provides as follows:

> "Except as otherwise provided herein, Rule 58 F.R.Civ.P. applies in cases under the Code. *Every judgment* entered in an adversary proceeding *or contested matter* shall be set forth on a separate document. A judgment is *effective when entered* as provided in Rule 5003. The reference in Rule 58 F.R.Civ.P. to Rule 79(a) F.R.Civ.P. shall be read as a reference to Rule 5003 of these Rules." (emphasis added).

c. Bankruptcy Rule 5003 requires the clerk to keep a docket in each case and to

> "... enter thereon each judgment, order, and activity in that case ... the entry of a judgment or order in a docket shall show the date the entry is made."

2. It should be noted that Code § 546 does not require that the trustee under § 702 be qualified in order to be "appointed" or that an order, if any, be final to be effective. See, e.g., Code § 322(a), which provides

> "... a person selected under § ... 702 ... to serve as trustee in a case under this title qualifies if before 5 days *after* such election, and before beginning official duties, such person has filed with the court a bond in favor of the United States condition on a faithful performance of such official duties." (emphasis added)

Code § 701(b) also provides that "the service of an interim trustee under this section terminates when a trustee elected or designated under § 702 of this title to serve as trustee in a case qualifies under § 322 of this title." It is apparent then that a trust-

ee can be considered appointed before being qualified and does not have to be appointed by a final order to satisfy § 546(a).

3. Nevertheless, the Code clearly requires that a § 702 trustee "be appointed." The appointment is automatic where (a) no effort is made to elect an alternate trustee; (b) an election is held which is not disputed; and (c) where an election is held, disputed, but no timely motion is filed to have the court resolve the dispute. (Rule 2003).

4. It is only where there is a disputed election and a timely motion seeking resolution that the court is required to act. Cardell makes much of the "fact" that IBP "withdrew" its motion at the February 8, 1988 hearing. The argument is that somehow the withdrawal made the dispute evaporate, thus "automatically" deeming the interim trustee's appointment as the permanent trustee. No authority is provided for this position. Furthermore, it is unsupported by the facts. It was not IBP's motion, but NPC–H's motion, that was set for a hearing. The announcement that IBP was "withdrawing" its motion did not purport to represent that other creditors who had voted for Jim Pair were withdrawing their support. Moreover, NPC–H appeared to present its motion. However, no party appeared to present evidence in opposition to NPC–H's position. The court thus found that its objection to the election should be sustained and an order was to be drafted and presented to the court to evidence its ruling. As previously indicated, such an order was signed and entered.

5. Cardell urges this court to read two cases for the proposition that the appointment is the date the order is signed. The first is *Albrecht v. Robison*, 36 B.R. 913 (D.Utah, 1983). This was a Chapter 11 case involving § 1104 which requires notice and hearing for appointment of a Chapter 11 trustee. The opinion of the court indicates that "the operative act of appointment is the judge's signature upon a written order of appointment." That district court went on to note that it did not believe Bankruptcy Rule 9021 or F.R.Civ.P. 58 were applicable because they related only to final orders subject to appeal. Notwithstanding that, the court found that a written order which was dated September 9, 1980 and which coincidentally was entered on the docket on that same date, was the date from which the trustee was deemed appointed. Considering that the separate document requirement of Rule 9021 and F.R.Civ.P. 58 was enacted solely to eliminate the uncertainty about when the time for appeal of final judgments begins to run, the district court reasoned that the rules therefore did not determine the "moment in time when a court officer had been appointed." The court nevertheless found that an earlier oral pronouncement by the bankruptcy court indicating who the trustee was going to be was not the date from which time would run. The court held that the time ran from the date that a written order was executed, stating:

> "So much flows from the status of the trustee, from the running of time limitations to the power to deal with debtor's property, that it is appropriate that the *order of appointment be formalized,* that it bear the signature of the bankruptcy judge, thus evidencing unambiguously to all the world the commission and authority of the trustee to act as well as provide for him a discreet time frame in which he must act." (emphasis added).

6. Cardell urges this language in support of its position that February 11, 1988 is the operative date of appointment of the § 702 trustee in this case. What Cardell misses however is how the District Court in *Albrecht* defined the issue before it.

> "If a court 'orders the appointment' of a trustee … in what form must the court … appoint a … person to serve as trustee …? Does the court appoint a … trustee by oral announcement in court or does the court appoint by *formal written order signed and* docketed?" *Albrecht* at 915. (emphasis added).

Thus, the issue was not between the oral announcement, the signing date, or the entry date. The issue was between the oral date and a written, signed and *docketed* date. When *Albrecht* then refers to a "for-

malized order," the court, in effect, is finding that the formal requirement of Rule 9021 should apply and docketing is essential.

7. The second case cited by Cardell in favor of its position is *In re MortgageAmerica Corp.*, 831 F.2d 97 (5th Cir.1987). Again, this was a Chapter 11 case which would have required an order of the court to effectuate the appointment of a trustee. As with *Albrecht*, the appointment of the trustee then is guided by Code § 1104, not Code § 702. In any event, the facts in *MortgageAmerica* included the following:

    a. MortgageAmerica was forced into involuntary bankruptcy in August, 1981;

    b. On January 12, 1983, the bankruptcy court orally appointed a trustee for the estate;

    c. The clerk of the court noted the oral appointment on the docket sheet, however the bankruptcy court did not enter a written order at that time;

    d. On June 10, 1983, the bankruptcy court signed and entered a written order appointing the trustee. The order included "nunc pro tunc" language making the trustee's appointment effective from January 12, 1983, the date of the oral pronouncement;

    e. On June 10, 1985, MortgageAmerica filed a complaint against American Federal Savings and Loan, et al. for avoidable preference and fraudulent transfer and the defendants moved to dismiss the complaint on the grounds that it was filed more than two years after the appointment of the trustee and thus, was barred by the limitation provision in Code § 546(a). In that case the defendant argued that the operative date for commencing the limitation period was the January 12, 1983 date on which the trustee was orally appointed and the date from which the bankruptcy court's nunc pro tunc order made the appointment effective. The debtor's position was that the limitations period only commenced when the bankruptcy court entered the written order on June 10, 1983.

8. The Fifth Circuit also identified the issue presented to it. It said that the defendant to the preference action argued that the statute of limitations ran from the date "the trustee was orally appointed and the date from which the bankruptcy court's nunc pro tunc order made the appointment effective", while the trustee argued that the appointment commenced when the "bankruptcy court *entered* the written order formalizing the appointment ...". (emphasis added). *MortgageAmerica*, at 98.

Quoting from *Albrecht* at 917, the Fifth Circuit agreed that the oral pronouncement was not sufficient and that the "... limitations period under Section 546 should commence consistent with the appointment of a trustee through a written order." *MortgageAmerica*, at 98.

Their reference to the language of the *Albrecht* court is approval of a formalized order. In fact, the Fifth Circuit noted that:

    "The record here suggests that the trustee here was in fact appointed in January 1983 and that it was only an oversight that no *written order* to that effect was *immediately* entered. Apparently realizing the oversight, the bankruptcy court *entered* an order in June 1983 to *formalize* its appointment ...". (emphasis added).

The Court went on to give effect to the entered order, which was nunc pro tunc to January. The finding therefore validates the position that the appointment is accomplished by means of a formal order, written, dated, signed by the judge and entered on the docket. It was the entered order that appointed the trustee and a different appointment date from the entry date was derived only because the court held that the nunc pro tunc language was effective. *MortgageAmerica*, at 99.

9. Cardell has also affirmatively interposed laches as a defense to the trustee's suit. This court does not find laches to be applicable. See, e.g., *In re Korvettes, Inc.*, 67 B.R. 730, 734 (S.D.N.Y.1986) (laches is not applicable where the cause of action is governed by a statute of limitations) citing *United States v. Repass*, 688 F.2d 154, 158 (2d Cir.1982); *In re Silver Mill Frozen*

*Foods, Inc.*, 23 B.R. 179, 181 (Bankr.W.D. Mich.1982).

### CONCLUSION

Within the meaning of § 546(a), a § 702 trustee is appointed automatically, without any need for court intervention in most cases. The interim trustee becomes the permanent trustee if no election is held (Code § 702(d)) and where an election is held, contested, and no party files a timely motion for resolution of the dispute (Rule 2003(d)). If an election is undisputed, then the person elected serves and the court is merely notified of the trustee's name (Rule 2003(d)). It is only when an election is disputed and a timely motion filed that the court is required to act.

This court's reading of *Albrecht* and *MortgageAmerica* leads it to conclude that appointment under such circumstances is to be made by a formalized order. Such an order is one in writing, dated, signed by the judge and entered on the docket. The order in this case did not attempt to effectuate the appointment of the trustee nunc pro tunc. It therefore became operative when entered. This complaint was filed within two years of such appointment. The Motion To Dismiss should therefore be denied. A separate order of even date herewith will be entered denying Cardell's motion.