In re AJAYEM LUMBER CORP., Ajayem Lumber Midwest Corp., Ajayem Lumber Southeast, Ajayem Lumber Corp. of Tampa, Debtors.

Jeffrey L. SAPIR, Trustee, Plaintiff,

v.

GREEN FOREST LUMBER LIMITED, Defendant.

Bankruptcy Nos. 88 B 20609–88 B 20612. No. 91–6236A.

United States Bankruptcy Court, S.D. New York.

Oct. 8, 1992.

Nisen & Elliott, Chicago, Ill., for Green Forest Lumber Ltd.; John K. Kneafsey, of counsel.

Mayer, Brown & Platt, New York City, for trustee.

DECISION ON TRUSTEE'S ACTION TO RECOVER PREFERENCE AND MOTION TO DISMISS PURSUANT TO SECTION 546(a)

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This is a preference action brought by the Chapter 7 trustee for Ajayem Lumber Corp., Ajayem Lumber Midwest Corp., Ajayem Lumber Southeast, and Ajayem Lumber Corp. of Tampa (collectively the "debtors") against Green Forest Lumber Limited ("Green Forest"), one of the debtors' trade creditors. Green Forest argues that payments that it received from the debtors within the 90–day preference period are not voidable because the payments were made in the ordinary course of business pursuant to 11 U.S.C. § 547(c)(2). Prior to the trial, Green Forest submitted a motion to dismiss the adversary proceeding for failure to timely file a complaint pursuant to 11 U.S.C. § 546(a). The court will also now address Green Forest's motion to dismiss.

## FINDINGS OF FACT

1. On November 4, 1988, each of the debtors filed with this court petitions for relief under Chapter 11 of the Bankruptcy Code. By order of this court dated November 13, 1990, each of the debtors' Chapter 11 cases was converted to a case under Chapter 7 and a trustee was appointed pursuant to 11 U.S.C. § 702.

2. At present, the trustee has commenced approximately fifty preference actions and expects to file approximately thirteen more preference actions. The proceeds of any successful preference actions constitute the only remaining asset of the debtors' estates.

3. On December 6, 1991, the trustee filed an adversary complaint which seeks to recover from Green Forest the amount of $32,133.03. The trustee asserts that this amount constitutes several voidable preferences pursuant to 11 U.S.C. §§ 547(b) and 550.

4. The defendant, Green Forest, is located in Chicago, Illinois. Green Forest was one of the debtors' suppliers of wood products.

5. Green Forest served an answer on or about January 22, 1992, along with a "Motion to Dismiss" on statute of limitations grounds, but did not include a "Notice of Motion." The parties agreed to argue the

motion to dismiss at the same time as the trial of the adversary proceeding.

6. In its answer to the trustee's complaint, Green Forest denies that the debtors made certain transfers to it in the amount of $32,133.03 within 90 days prior to the filing of the bankruptcy petition. Instead, Green Forest states in its answer that the payments cannot be avoided by the trustee because they fall within 11 U.S.C. § 547(c)(2), the ordinary course of business exception. Green Forest's answer is inconsistent with its own memorandum of law to the extent that its answer states that Green Forest denies that the transfer was made and that the trustee may not avoid the transfer pursuant to 11 U.S.C. § 547(c)(2), while its memorandum of law states:

> In July, 1988, truckloads of spruce/pine/fir, were delivered to creditor Ajay-em Lumber Southeast Corp.
>
> These deliveries were paid for within (30) to sixty (60) days.

With this statement, Green Forest concedes that the debtors made the payments for these goods some time in August or September of 1988. Accordingly, the payments were made within 90 days of the filing of the petition, as the debtors filed on November 4, 1988.

7. The parties' stated trade terms, as reflected on the invoices, were "2% 10 Days, Net 11th." Trial Exhibit 2. Under these terms, payment in full was due 11 days after the invoice date, and the debtors could take a 2% discount if payment was made in the first 10 days after the invoice date.

8. The trustee has submitted a table summarizing 16 transactions between the debtors and Green Forest prior to the preference period. The number of days between the date of the invoice and the date of the debtors' check varies from 9 to 18 days.

9. The trustee's complaint alleges that the debtors made *"a certain transfer* to the Defendant in the amount of $32,133.03" during the preference period. Complaint, at ¶ 8 (emphasis added). The following is a chart of the alleged preferences:

| INVOICE | DATE BILLED | AMOUNT | CHECK DATE | # – DAYS |
|---|---|---|---|---|
| 49450 | 07–19–88 | 10,205.30 | 08–22–88 | 34 |
| 49694 | 07–21–88 | 7,018.85 | 08–22–88 | 32 |
| 49976 | 07–25–88 | 7,633.36 | 08–22–88 | 28 |
| 00394 | 07–27–88 | 7,275.52 | 08–29–88 | 33 |

10. It is obvious from the dates of the checks that there were two alleged preferences. The debtors paid for invoice numbers 49450, 49694 and 49976 with check number 9221, dated August 22, 1988 in the amount of $24,857.51. Trial Exhibit 2. The debtors paid for invoice number 00394 with check number 9327, dated August 29, 1988 in the amount of $7,275.52. *Id.* The two checks constitute the two possible preferences.

11. A representative of Green Forest's sales office testified that it is the industry practice in the lumber business for customers to remit payment from 12 to 40 days from the invoice date. This testimony was unrefuted by the debtors.

12. Green Forest's representative also testified that if a customer failed to pay for an invoice within 30 days of the invoice date, Green Forest would telephone that customer to inquire as to the payment. In addition, if a bill was not paid within 30 days, Green Forest would suspend trading with that particular customer. Green Forest's representative testified that after 1986, trade with the debtors had been temporarily suspended approximately six times.

13. There was no evidence that Green Forest made such a call to the debtors regarding the two payments in question, nor was there evidence that this payment came after Green Forest had suspended

trade with the debtors. The debtors simply made the two payments, unprompted by Green Forest.

## DISCUSSION

### Motion to Dismiss

Green Forest seeks dismissal of the adversary complaint based on lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b), as made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 7012(b). In ruling on a motion to dismiss, a court "should not dismiss the complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 123 (2d Cir.1991) (citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Section 546(a) of the Bankruptcy Code, which governs the time for filing a preference action, provides:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title;

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

Green Forest argues that the complaint was not timely filed because the two-year statute of limitation set forth in section 546 expired while this case was proceeding in Chapter 11, and consequently, no time remained to file the adversary complaint when the trustee was appointed. In essence, Green Forest asks this court to interpret section 546(a)(1) so that the phrase "after the appointment of a trustee," means after the commencement of the case. In support of its position, Green Forest cites *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520 (10th Cir.1990).

In *Zilkha*, the Tenth Circuit dismissed a complaint brought under 11 U.S.C. § 544 because the Chapter 11 debtor had not filed the complaint within two years of the date

of the petition and therefore was time-barred pursuant to 11 U.S.C. § 546(a). The *Zilkha* court was only interested in whether the debtor-in-possession was required to file such a complaint within two years because section 546 speaks in terms of the trustee rather than the debtor-in-possession. *Zilkha* did not involve, as the present case does, the question of whether a Chapter 7 trustee is entitled to a new two-year period upon appointment. In fact, the *Zilkha* court stated:

We take no position on whether a subsequent appointment of a trustee in a chapter 11 case would change the analysis. *See Boatman v. E.J. Davis Co.*, 49 B.R. 719 (Bankr.D.Conn.1985). *While we perceive that to be a distinguishable circumstance requiring a different analysis, we leave the issue for a case in which that issue arises.*

*Zilkha*, 920 F.2d at 1524 n. 11 (emphasis added). Accordingly, *Zilkha* is inapplicable to the present case.

Instead, the recent case of *In re D–Mart Services, Inc.*, 138 B.R. 985 (Bankr.Utah 1992), addresses the appropriate issue of whether a trustee appointed in a case that converts from Chapter 11 to Chapter 7 must file an action governed by section 546 within two years of the date of the petition or from two years from the date of the trustee's appointment, as section 546 specifically states. In *D–Mart*, the Chapter 11 case was filed on December 29, 1987 and was converted to Chapter 7 on July 12, 1988, at which time a trustee was appointed. On July 11, 1990, the trustee filed several preference actions and the defendants asserted that the two-year statute of limitations in section 546 barred the trustee from filing such preference actions. After distinguishing *Zilkha*, the *D–Mart* court held that a Chapter 7 trustee has two years from the date appointed to initiate a cause of action under any of the sections enumerated in section 546(a). *D–Mart*, 138 B.R. at 989. *See also In re Nash Phillips/Copus–Houston, Inc.*, 114 B.R. 466 (Bankr. W.D.Tex.1990).

In *D–Mart*, the trustee was appointed less than two years after the date the

Chapter 11 petition was filed so that the trustee, if required to file a preference action within two years of the petition date rather than the appointment date, would have still had some time in which to file such an adversary complaint. In the present case, the trustee was appointed after the case had proceeded for two years in Chapter 11 so that the present trustee would not have had an opportunity to file any preference actions. Whether a trustee has a minimum period or no opportunity to file such a complaint is irrelevant because the operative time at which the two year period begins to run is the date the trustee is appointed in the Chapter 7 case, rather than the date the Chapter 11 petition was filed. Courts that have so held have explained that debtors-in-possession may be disinclined to bring preference actions against their suppliers because Chapter 11 has as its purpose the rehabilitation of the debtor, while the purpose of Chapter 7 is to collect and reduce to money the property of the estate. *See D–Mart*, 138 B.R. at 988; *In re Afco Development Corp.*, 65 B.R. 781 (Bankr.D.Utah 1986). Accordingly, Green Forest's motion to dismiss is denied because the trustee filed the complaint within two years of his appointment.

### The Preferences

Section 547(g) of the Bankruptcy Code provides that "the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor ... has the burden of proving the nonavoidability of a transfer under subsection (c) of this section." 11 U.S.C. § 547(g).

The trustee may avoid any transfer made by the debtor if the debtor made the transfer:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition ...; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The trustee has satisfied sections 547(b)(1) and (2) because the two payments were made for the benefit of Green Forest, a creditor, and on account of an antecedent debt owed by the debtors before the payment was made. The stated trade terms were "2% 10 days, Net 11th," which meant that in any event, payment was required within 11 days. Check number 9221, dated August 22, 1988, in the amount of $24,-857.51 was tendered in payment for invoice numbers 49450, 49694, and 49976 and equaled the specific amount of those invoices. Therefore, the payment was on account of antecedent debt.

The trustee is deemed to have satisfied section 547(b)(3), that the debtors made the payment while insolvent, by virtue of section 547(f), which states that "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). Where the transferee offers no evidence regarding solvency, the trustee may rely upon the statutory presumption. *WJM, Inc. v. Massachusetts Department of Public Welfare*, 840 F.2d 996, 1010 (1st Cir.1988); *In re Coco*, 67 B.R. 365 (Bankr.S.D.N.Y.1986).

Green Forest has admitted the fourth requirement of section 547(b), that the debtors made certain transfers to it in the amount of $32,133.03 within 90 days prior to the petition date. *Memorandum of Law of Green Forest*, at 1 (deliveries made in July 1988 were paid for within 30 to 60 days and petition was filed on November 4, 1988).

The trustee has also met the fifth requirement of section 547(b), that the two payments allowed Green Forest to receive

more than it would have received had the debtors not made that payment and Green Forest received satisfaction of its debt as provided for by the Bankruptcy Code. The trustee argues that because the debtors' sole assets are its preference actions and because the maximum preference recoveries will be insufficient to pay the debtors' secured creditor, unsecured creditors will not receive any distribution. Accordingly, the trustee contends that any preferential payment to an unsecured creditor, such as Green Forest, enables that creditor to receive more than it will in these Chapter 7 cases. Consequently, the trustee has made out a prima facie case that the two payments constituted preferences pursuant to 11 U.S.C. § 547(b).

### Ordinary Course of Business under 547(c)(2)

The transferee of a preferential payment may prevent a trustee from avoiding the transfer by satisfying the three requirements of 11 U.S.C. § 547(c)(2), which states:

(c) The trustee may not avoid under this section a transfer—

. . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2). Each element of section 547(c)(2) must be satisfied because the section is written in the conjunctive. There can be no doubt that Green Forest has satisfied subsection (A) because the debtor made the two transfers in payment of debt incurred in the ordinary course of its business, namely as payment for wood products received in July, 1988.

Section 547(c)(2)(B), the subjective prong of the statute, requires proof that the payments were ordinary compared to other business dealings between the parties. To determine whether such payments were ordinary, "courts examine several factors, including timing, the amount and manner a transaction was paid and the circumstances under which the transfer was made." *Yurika Foods Corp. v. United Parcel Service (In re Yurika Foods Corp.)* 888 F.2d 42 (6th Cir.1989).

Section 547(c)(2)(C), the objective prong of the statute, requires that the transfer is ordinary with regard to the standards prevailing in the particular industry. *Logan v. Basic Distribution Corp. (In re Fred Hawes Organization, Inc.)*, 957 F.2d 239, 244 (6th Cir.1992), *reh'g en banc denied*, (April 10, 1992); *WJM*, 840 F.2d at 1010–11.

Green Forest argues that the two payments made by the debtors that the trustee seeks to recover as voidable preferences were made in the debtors' ordinary course of business pursuant to 11 U.S.C. § 547(c)(2). Green Forest asserts that the industry practice was that invoices were paid within 12 to 40 days from the date of the invoice. Therefore, Green Forest argues that to the extent that the two payments were made within the range prevailing in the lumber industry, they were payments made under the ordinary course of business and satisfy section 547(c)(2)(C), the objective prong of the statute.

Moreover, Green Forest contends that it was not unusual for it to receive payment from these debtors within 30 days from the invoice date. In fact, at the thirty day mark, Green Forest's accounting department telephoned the customer to inquire as to the payment. In addition, Green Forest suspended all trading with any customer that did not pay a bill within 30 days. Indeed, after 1986, Green Forest temporarily suspended trade with these debtors approximately six times. Green Forest argues that no telephone call was made to the debtors when payment was not received from the debtors within 30 days and these two payments were not made as a result of Green Forest suspending trade with the debtors. The debtors simply made an unprompted payment, albeit later than their previous payments.

The trustee argues that the affirmative defense of 11 U.S.C. § 547(c)(2) which Green Forest has raised is inapplicable because the two payments were made substantially later than any of the other payments relating to the 16 transactions between the debtors and Green Lumber, documented in Trial Exhibit 2, namely 34, 32, 28, and 33 respectively. Therefore, the trustee asserts that the debtors did not make the two transfers in the ordinary course of business pursuant to 11 U.S.C. § 547(c)(2)(B).

The purpose of the ordinary course of business exception is to protect ordinary trade creditor transactions. "The purpose of this exception is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 373 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 88 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5874, 6329. In *In re Rave Communications, Inc.,* 128 B.R. 369, 372–73 (Bankr.S.D.N.Y.1991), the court found that even late payments satisfied section 547(c)(2)(B) if that was the normal course of business practice between the parties.

In the present case, the debtors did not make the two payments in question later than they made other payments for other invoices. Although the two payments which are the subject of this preference action were made later than the payments for 16 other transactions which the trustee submits comprise the universe of transactions between these two parties, Green Forest did not suspend any trading with the debtors as it did six times in the past for failure to pay for other invoices within 30 days. Moreover, Green Forest has had to telephone the debtors when payment as to other invoices was not received within 30 days to inquire as to the status of those other payments. The two preferential payments in question were not made as a result of Green Forest suspending trading with the debtors or after a telephone call to the debtors. The debtors made the two payments, unprompted by Green Forest. This was the ordinary business practice between the debtors and Green Forest and therefore the two payments satisfy section 547(c)(2)(B).

Each of the transfers was received between 28 and 34 days after invoice date. The unrefuted testimony by the representative from Green Forest was that payment from 12 to 40 is normal and the industry practice in the lumber business. Therefore, as to the objective prong, section 547(c)(2)(C), Green Forest has demonstrated that the two payments in question were "made according to ordinary business terms."

Accordingly, the trustee's complaint is dismissed.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter of this proceeding under 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(F).

2. Green Forest's motion to dismiss the adversary complaint is denied because the trustee filed the complaint within two years of the date of his appointment.

3. The trustee has established that the August 22, 1988 and August 29, 1988 payments made by the debtors to Green Forest are preferences pursuant to 11 U.S.C. § 547(b).

4. Green Forest has established that the two payments by the debtors fall within the ordinary course of business exception under 547(c)(2).

5. The trustee's complaint to recover preferential payments is dismissed.

SETTLE Order on notice.