37 F.3d 1329
 63 USLW 2246, 26 Bankr.Ct.Dec. 188, Bankr.
L. Rep. P 76,141
 Thomas G. McCUSKEY, Trustee, Plaintiff-Appellee,
v.
CENTRAL TRAILER SERVICES, LTD., Defendant-Appellant.
Thomas G. McCUSKEY, Trustee, Plaintiff-Appellee,
v.
PACCAR FINANCIAL SERVICES, Defendant-Appellant.
Thomas G. McCUSKEY, Trustee, Plaintiff-Appellee,
v.
GREYHOUND FINANCIAL CORPORATION, sued as Greyhound Leasing &
Financial Corporation, Defendant-Appellant.
Thomas G. McCUSKEY, Trustee, Plaintiff-Appellee,
v.
GENERAL ELECTRIC CAPITAL CORPORATION, formerly known as
General Electric Credit Corporation, Defendant-Appellant.
Thomas G. McCUSKEY, Trustee, Plaintiff-Appellee,
v.
SIGNAL CAPITAL CORPORATION, Defendant-Appellant.
 Nos. 93-4121, 93-4123, 93-4124, 93-4128 and 93-4131.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 9, 1994.
Decided Oct. 13, 1994.
Rehearing Denied Nov. 15, 1994.
 
 Mark Walz, Des Moines, IA, argued (Gerald J. Newbrough for General Elec. Capital Corp., Peter Cannon, for Signal Capital Corp. and Mark D. Walz, for Paccar Financial Corp., Greyhound Financial Corp. and Cent. Trailing Services, on the joint brief), for appellants.
 Thomas McCuskey, Cedar Rapids, IA, argued (Jeffrey P. Taylor and Thomas G. McCuskey, on the brief), for appellee.
 Before LOKEN, Circuit Judge, BRIGHT, Senior Circuit Judge, and HANSEN, Circuit Judge.
 HANSEN, Circuit Judge.
 
 
 1
 The defendants, creditors of Rose Way, Inc., appeal the district court's order reversing the bankruptcy court's dismissal of preferential transfer actions brought under 11 U.S.C. Sec. 547 by Thomas G. McCuskey as trustee of Rose Way, Inc.'s chapter 7 bankruptcy estate. The bankruptcy court found that the preference actions were barred by the two-year statute of limitation contained in 11 U.S.C. Sec. 546(a)(1), which began to run while Rose Way was in chapter 11 bankruptcy and which expired shortly after Rose Way's case was converted to chapter 7. The district court reversed, finding that the preference actions were not time barred because the two-year limitation period began to run anew after Rose Way's bankruptcy was converted to chapter 7. We conclude that the preference actions were time barred and reverse the district court.
 
 I.
 
 2
 The facts are not in dispute. On June 8, 1989, Rose Way, Inc., filed a chapter 11 (business reorganization) bankruptcy proceeding. Rose Way operated as "debtor in possession" managing and administering its own bankruptcy estate until December 22, 1989, when the bankruptcy court appointed Sternco, Inc., as a chapter 11 trustee under 11 U.S.C. Sec. 1104. Sternco served as the chapter 11 trustee until July 2, 1990, when the case was converted to a chapter 7 (liquidation) proceeding on the motion of the United States Trustee and the Unsecured Creditors' Committee. Thomas G. McCuskey was appointed under 11 U.S.C. Sec. 701 as the interim chapter 7 trustee for Rose Way. On August 15, 1990, following the first meeting of creditors, McCuskey became the permanent chapter 7 trustee.
 
 
 3
 On July 2, 1992, McCuskey filed adversary proceedings against a number of Rose Way's creditors seeking the recovery of "preferential transfers" under 11 U.S.C. Sec. 547(b).[1] The defendant-creditors moved to dismiss the preference actions arguing that they were time barred under 11 U.S.C. Sec. 546(a)(1). Section 546(a)(1) provides a two-year statute of limitation for several actions brought by the trustee which begins to run from the time of "the appointment of a trustee" under the Bankruptcy Code. The defendants argued that the statute of limitations began to run with the appointment of the chapter 11 trustee on December 22, 1989, and had expired by the time McCuskey brought these preference actions on July 2, 1992. Mr. McCuskey argued that the statute of limitations for preference actions began to run anew when he was appointed as the permanent chapter 7 trustee on August 15, 1990, and that he had filed the preference actions well before the statute of limitations would have expired on August 15, 1992.
 
 
 4
 The bankruptcy court held that the statute of limitations began to run on the date that the chapter 11 trustee was appointed and dismissed McCuskey's preferential transfer actions as untimely under 11 U.S.C. Sec. 546(a)(1). Mr. McCuskey appealed, and the district court reversed, holding that the statute of limitations under Sec. 546(a)(1) started anew when McCuskey was appointed as chapter 7 trustee and, therefore, the Sec. 547 preference actions were not time barred. 160 B.R. 811. The defendants appeal.
 
 II.
 
 5
 Section 546(a) of the Bankruptcy Code provides limitations on the trustee's ability to bring certain actions for the benefit of the bankruptcy estate. Section 546(a)(1) provides that an action to recover, among other things, a preferential transfer under Sec. 547 "may not be commenced after ... two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202" of the Bankruptcy Code. There is no dispute in this case that the two-year statute of limitations initially began to run with the appointment of a chapter 11 trustee on December 22, 1989. The sole and determinative issue is whether the district court erred in concluding that the two-year statute of limitations started to run anew when McCuskey was appointed as the chapter 7 trustee on August 15, 1990. This is entirely a legal issue, and we review the district court's conclusion de novo. Novelly v. Palans (In re Apex Oil Co.), 960 F.2d 728, 731 (8th Cir.1992).
 
 
 6
 The courts addressing this issue have reached opposite conclusions. Some courts, like the bankruptcy court here, have found that Sec. 546(a)(1) provides for one continuous limitation period which starts with the appointment of the first trustee and which does not start anew with the appointment of a new trustee. See, e.g., Ford v. Union Bank (In re San Joaquin Roast Beef), 7 F.3d 1413, 1415 (9th Cir.1993); Grabscheid v. Denbo Iron & Metal, Inc. (In re Luria Steel & Trading Corp.), 164 B.R. 293, 296-97 (Bankr.N.D.Ill.1994); Steege v. Lyons (In re Lyons), 130 B.R. 272, 276-78 (Bankr.N.D.Ill.1991); Mann v. Commonwealth Sav. & Loan (In re Ollada), 114 B.R. 654, 656 (Bankr.E.D.Mo.1990). These courts generally reason that the "plain meaning" of Sec. 546(a)(1) and the policies of finality and preventing stale claims which underlie statutes of limitations support the conclusion that the limitation period does not begin anew with the appointment of a subsequent trustee. See San Joaquin Roast Beef, 7 F.3d at 1415-16; Luria Steel, 164 B.R. at 296-97.
 
 
 7
 Other courts, like the district court, have concluded that upon conversion of a bankruptcy proceeding from chapter 11 to chapter 7, the Sec. 546(a)(1) limitation period begins anew when the chapter 7 trustee is appointed.[2] See, e.g., Amazing Enter. v. Jobin (In re M & L Business Mach., Inc.), 153 B.R. 308, 310 (D.Colo.1993); Nichols v. Wood (In re Wood), 113 B.R. 253, 255 (S.D.Miss.1990); Roberts v. Seneca Petroleum Co. (In re Wikel Mfg Co.), 153 B.R. 183, 185 (Bankr.N.D.Ohio 1993); Martino v. Assco Assoc., Inc. (In re SSS Enter., Inc.), 145 B.R. 915 (Bankr.N.D.Ill.1992); Sapir v. Green Forest Lumber Ltd. (In re Ajayem Lumber Corp.), 145 B.R. 813, 817 (Bankr.S.D.N.Y.1992); Stuart v. Pingree (In re AFCO Dev. Corp.), 65 B.R. 781, 786-87 (Bankr.D.Utah 1986). These courts give great weight to the fact that chapter 11 trustees do not have the same incentives as chapter 7 trustees to utilize their power to pursue and avoid preferential transfers and other avoidable transfers. See, e.g., M & L Business Mach., 153 B.R. at 310-11; Ajayem Lumber, 145 B.R. at 817; SSS Enter., 145 B.R. at 919. The chapter 11 trustee's duty is to keep the business running and often it is not in the best interest of the reorganization effort to pursue preference actions which may offend and isolate creditors whose support the debtor needs for financing, supplies, or votes to confirm a plan of reorganization. Ajayem Lumber, 145 B.R. at 817; SSS Enter., 145 B.R. at 919; Afco, 65 B.R. at 786-87. The chapter 7 trustee, on the other hand, has no similar concerns and instead has the duty to pursue all actions to maximize the estate for liquidation and distribution to all creditors. See 11 U.S.C. Sec. 704(1). Accordingly, these courts have concluded that upon conversion from chapter 11 the new chapter 7 trustee should be given a fresh limitations period to ensure that the trustee can comply with the duty to maximize the chapter 7 estate for distribution.
 
 
 8
 The bankruptcy court here followed the former line of cases while the district court reversed and followed the latter. The defendants urge us to reverse the district court arguing that the plain meaning of Sec. 546(a)(1) is that there is a single two-year statute of limitation that began to run with the appointment of the chapter 11 trustee and did not start anew with the appointment of the chapter 7 trustee. Mr. McCuskey argues that we should affirm the district court by adopting an interpretation of Sec. 546(a)(1) that does not handicap the chapter 7 trustee in performing his duties after a bankruptcy case is converted from chapter 11.
 
 
 9
 We are presented with a clear choice between two distinct alternatives. The only circuit court of appeals to address this specific issue has held that "the most logical interpretation of section 546(a) is that the statute of limitations begins running from the date the first trustee is appointed and that all subsequent trustees are subject to the same statute of limitations." San Joaquin Roast Beef, 7 F.3d at 1415. The Ninth Circuit further concluded that "[t]his result makes sense given the policy that underlies all statutes of limitations: prevention of overly stale claims." Id. The court went on to analyze and reject the chapter 7 trustee's arguments that Sec. 546(a)(1) should be read to provide a new two-year limitation because of the inconsistent objectives of a chapter 11 trustee and a chapter 7 trustee. Id.
 
 
 10
 We agree with the Ninth Circuit (and the bankruptcy court in this case) that the two-year statute of limitations did not begin to run anew with the appointment of the chapter 7 trustee. In particular, we agree that a "plain reading of section 546(a) is that the two-year statute of limitations begins running from the date the first trustee is appointed and that all subsequent trustees are subject to the same two-year statute of limitations." San Joaquin Roast Beef, 7 F.3d at 1416. In reaching this conclusion, we avoid creating a conflict within the circuits. See Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 795 F.2d 1393, 1400 (8th Cir.1986).
 
 
 11
 Mr. McCuskey argues, however, that the meaning of Sec. 546(a)(1) is far from "plain." He contends that Sec. 546(a)(1) is ambiguous and that we should turn to bankruptcy policy considerations to guide our interpretation of this provision. See United States ex rel. Harlan v. Bacon, 21 F.3d 209, 211 (8th Cir.1994) (quoting United States v. Cooper Corp., 312 U.S. 600, 605, 61 S.Ct. 742, 744, 85 L.Ed. 1071 (1941)) (when no plain meaning of statute we look to all available aids to construction including the policy intended). The district court found, and McCuskey argues, that Sec. 546(a)(1) is ambiguous because at least one court that concluded the two-year limitation begins anew with the appointment of a chapter 7 trustee also applied a "plain meaning" rationale. See SSS Enterprises, 145 B.R. at 918.
 
 
 12
 The bankruptcy judge in SSS Enterprises found that the disjunctive language, "after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202," plainly means that "each trustee appointed under a different chapter of the Code gives rise to a fresh two year period in which to bring actions under Sec. 547." 145 B.R. at 918. We respectfully disagree.[3] In our view, the disjunctive language only specifies that the single, continuous, two-year statute of limitations begins to run with the appointment of a trustee under one of the enumerated chapters, not that the limitations period should start over if the case is subsequently converted to another chapter and a new trustee is appointed. We find any other reading of the disjunctive language to be unnatural. See Bacon, 21 F.3d at 211 (quoting Cooper Corp., 312 U.S. at 605, 61 S.Ct. at 744) (courts "are to read the statutory language in its ordinary and natural sense").
 
 
 13
 Even if we were to assume, arguendo, that there is some ambiguity in Sec. 546(a)(1) and look to the policy considerations behind the statute, those considerations also weigh in favor of our conclusion that the two-year limitation on preference actions under Sec. 546(a)(1) did not start anew when McCuskey was appointed as the chapter 7 trustee. As the district court correctly observed, the courts addressing this issue have identified two competing policies to consider in construing Sec. 546(a)(1): (1) the purposes of statutes of limitations, i.e., to bring finality to issues and to prevent stale claims and (2) the policy of allowing the chapter 7 trustee to carry out his duties to maximize the chapter 7 estate. The district court concluded that the policy of allowing a chapter 7 trustee to do his duty was the more important and should govern the interpretation of Sec. 546(a)(1). We must respectfully disagree.
 
 
 14
 Section 546(a)(1) is a provision of limitation, not a provision designed to allow the chapter 7 trustee to maximize recovery for the chapter 7 estate. The purposes of this section then, like most statutes of limitations, are to bring finality to an issue and to prevent stale claims. See, e.g., Anderson v. Yungkau, 329 U.S. 482, 486, 67 S.Ct. 428, 430, 91 L.Ed. 436 (1947) ("the normal policy of a statute of limitations is to close the door--finally, not qualifiedly or conditionally"); San Joaquin Roast Beef, 7 F.3d at 1415 (policy that underlies all statutes of limitations is prevention of overly stale claims). Neither purpose is accomplished by interpreting the two-year limitation in Sec. 546(a)(1) to begin anew with the appointment of McCuskey as the chapter 7 trustee. Starting the limitation period anew would directly contradict the purpose of closing the door "finally, not qualifiedly or conditionally," Anderson, 329 U.S. at 486, 67 S.Ct. at 430, because although the limitation could completely expire during a chapter 11 case, the possibility would always remain that the trustee's recovery action could be resurrected by a later conversion to chapter 7.
 
 
 15
 We conclude that there is no indication anywhere in the Bankruptcy Code or the policies underlying Sec. 546(a)(1) that Congress intended courts construing Sec. 546(a)(1) to make the well-established purposes of statutes of limitations subservient to considerations of a chapter 7 trustee's ability to pursue actions to maximize the chapter 7 estate after a case is converted from chapter 11. In our view, if Congress had intended such an interpretation, it would have explicitly provided for it.
 
 
 16
 Although not cited or argued by the parties, we must discuss F & M Marquette Nat. Bank v. Richards, 780 F.2d 24, 25-26 (8th Cir.1985), where we held that the 60-day period set by Bankruptcy Rule 4007(c) for filing an action under 11 U.S.C. Sec. 523 to contest the dischargeability of a debt starts to run anew after a case is converted from chapter 11 to chapter 7. In Richards, we found persuasive the fact that "creditors may be less likely to file a dischargeability complaint in a chapter 11 proceeding where a reorganization plan may provide payments to them in full as opposed to a chapter 7 proceeding where their rights are determined by liquidation." Id. at 26. While the present case shares some common features with Richards, we conclude that significant differences between the cases exist and warrant different analyses and a different resolution.
 
 
 17
 In Richards, the time limit provided under Rule 4007(c) for the creditor to act in the chapter 11 proceeding was only 60 days (although it was extended in that case by agreement of the parties). 780 F.2d at 25. Here, the trustee had two years from the appointment of the chapter 11 trustee to file the preference action. Similarly, the basic purpose of the Rule 4007(c) 60-day rule we considered in Richards is ministerial--to enhance the efficient administration of the estate. See, e.g., Grossie v. Sam (In re Sam), 894 F.2d 778, 781 (5th Cir.1990) (a purpose of Rule 4007(c) is to promote efficient and expeditious administration of the estate); Jones v. Hill (In re Hill), 811 F.2d 484, 486-87 (9th Cir.1987) (while Rule 4007(c) resembles a statute of limitations it differs significantly because it does not grant repose to debtor or anyone else and instead avoids delays and assists administration). By allowing the period to run anew in Richards after conversion to chapter 7, which started a new administration of the estate, we did not defeat that purpose. Here, however, a main purpose of the Sec. 546(a)(1) statute of limitations is to prevent stale claims, and by starting the limitation period anew, we would defeat that purpose. Finally, in Richards we were concerned with the potential for abuse by debtors if an additional 60-day period was not provided. We specifically stated that if:
 
 
 18
 creditors do not receive a fresh sixty day period after conversion from chapter 11 to chapter 7, a debtor, knowing that creditors have not filed their dischargeability complaints within the sixty day period, could then discharge those debts by converting the case from chapter 11 to chapter 7 after the filing period has expired.
 
 
 19
 780 F.2d at 26. There is no similar potential for abuse in this case. The expiration of the Sec. 546(a)(1) limitation period benefits a few particular creditors, not the debtor. A creditor who received an avoidable transfer simply does not have the same ability or incentive after the period of limitation runs out in chapter 11 to convert the case to chapter 7 and accordingly there is little potential for abuse. Hence, we find Richards distinguishable from our case.
 
 
 20
 Mr. McCuskey's final argument is that our interpretation of Sec. 546(a)(1) should be guided by how the statute of limitations on preference actions functioned under the Bankruptcy Act, the predecessor of the Bankruptcy Code. See Afco, 65 B.R. at 783-85. The Supreme Court has held that where the language of a provision of the Bankruptcy Code is ambiguous, we should be reluctant to interpret that provision to effect a major change in "pre-Code practice" (under the Bankruptcy Act) absent some discussion in the legislative history of Congressional intent to change the practice. Dewsnup v. Timm, 502 U.S. 410, ----, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992). Mr. McCuskey points out that the Bankruptcy Act contained a two-year limitation on actions brought by a trustee, 11 U.S.C. Sec. 29(e) (repealed), and specifically required tolling of the preference period while a reorganization case was pending, 11 U.S.C. Sec. 661 (repealed). See Afco, 65 B.R. at 783-85. He contends that this "pre-code" practice recognized that the reorganization trustee and the liquidation trustee had different objectives and that the liquidation trustee was explicitly provided an additional two-year period to pursue avoidable transfer actions. He argues there is no indication anywhere in the legislative history of Sec. 546(a)(1) that the Congress intended to change this pre-code practice. See Afco, 65 B.R. at 783-85.
 
 
 21
 We conclude that the Dewsnup "pre-Code practice" rule is inapplicable in this case. First, there must be ambiguity in the Bankruptcy Code provision at issue for the rule to apply. Dewsnup, 502 U.S. at ----, 112 S.Ct. at 779. We have specifically concluded here that there is no ambiguity. Furthermore, under the Bankruptcy Act, the two-year limitation period was explicitly tolled by statutory provision, 11 U.S.C. Sec. 661 (repealed), while the Code has expressly and unambiguously done away with the tolling practice of the Bankruptcy Act. See 11 U.S.C. Sec. 546(a)(1) (specifically providing that two-year limitations period runs during a chapter 11 reorganization proceeding as well as reorganizations in chapter 12 and 13). The "pre-Code practice" McCuskey would have us look to was abolished by Congress under the express terms Sec. 546(a)(1) and accordingly, does not provide any guidance in interpreting Sec. 546(a)(1).
 
 III.
 
 22
 For the reasons stated above, we reverse the judgment of the district court and remand the case to the district court with instructions for it to remand to the bankruptcy court for dismissal of the preference claims.
 
 
 
 [1]
 A preferential transfer is defined as: (1) a transfer of a property interest from the debtor; (2) on account of antecedent debt; (3) to or for the benefit of a creditor; (4) made while the debtor was insolvent; (5) within 90 days prior to the bankruptcy filing; (6) that allowed the creditor to receive more than that creditor would have received in chapter 7 liquidation. Buckley v. Jeld-Wen (In re Interior Wood Products Co.), 986 F.2d 228, 230 (8th Cir.1993); 11 U.S.C. Sec. 547(b). The Sec. 547(b) preference action "prevents the debtor from favoring one creditor over others by transferring property shortly before filing for bankruptcy." Begier v. IRS, 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990). The fundamental purpose of the preference action "is to restore the bankruptcy estate to its pre-preferential transfer condition." Halverson v. Le Sueur State Bank (In re Willaert), 944 F.2d 463, 464 (8th Cir.1991)
 
 
 [2]
 Some of these courts, however, have acknowledged that the limitation period does not run anew when there is no conversion from one chapter of the Bankruptcy Code to another and a successor trustee simply is appointed in the same chapter. See Ajayem Lumber, 145 B.R. at 816 (distinguishing case where successor chapter 7 trustee appointed in chapter 7 proceeding); SSS Enter., 145 B.R. at 918 (same)
 
 
 [3]
 We note that two other bankruptcy judges in the same Northern District of Illinois have taken positions differing from the bankruptcy judge in SSS Enter. See Luria Steel, 164 B.R. at 296-97; Lyons, 130 B.R. at 276-77. The bankruptcy judge in Luria Steel explicitly rejected the SSS Enterprises analysis. 164 B.R. at 296-97