7 F.3d 1413
 62 USLW 2252, 29 Collier Bankr.Cas.2d 1487,
27 Fed.R.Serv.3d 255, 24 Bankr.Ct.Dec. 1308,
Bankr. L. Rep. P 75,490
 In re SAN JOAQUIN ROAST BEEF, a California Corporation, Debtor.
James M. FORD, as Trustee of the Estate of San Joaquin Roast
Beef, a California Corporation, Plaintiff-Appellant,
v.
UNION BANK, Federal Savings and Loan Insurance Corporation,
Presidio Savings and Loan Association, Federal Deposit
Insurance Corporation, as Receiver of Presidio Savings and
Loan Association, Defendants-Appellees.
 No. 93-15016.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 9, 1993.
Decided Oct. 20, 1993.
 
 David R. Jenkins, Lang, Richert & Patch, Fresno, CA, for plaintiff-appellant.
 Bonnie L. McCarthy, Atty. (argued), Tina A. Lamoreaux, Sr. Atty. (briefed), Bankruptcy Legal Div., F.D.I.C., Newport Beach, CA, for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before: SNEED, POOLE and TROTT, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 Chapter 7 trustee James M. Ford appeals the district court's decision affirming the bankruptcy court's dismissal of the trustee's action against the FDIC to recover preferential transfers allegedly made by the debtor, San Joaquin Roast Beef, to the FSLIC. The bankruptcy court dismissed the action as barred by 11 U.S.C. § 546(a)'s two-year statute of limitations.
 
 
 2
 Ford makes three arguments that his adversary proceeding was timely filed. First, he contends that the statute of limitations started running anew following conversion of the case from a Chapter 11 proceeding to a Chapter 7 proceeding and appointment of a new trustee. Second, he argues that even if the statute of limitations began running on the date the Chapter 11 trustee was appointed, his action was timely filed within two years of entry of the order appointing the Chapter 11 trustee. Finally, he asserts that the bankruptcy court's orders misled him as to the date the trustee was appointed and that therefore, the bankruptcy court should have vacated its first order appointing the Chapter 11 trustee, which would result in his action being timely.
 
 
 3
 We review de novo Ford's claims concerning when section 546(a)'s statute of limitations began to run. See Donoghue v. County of Orange, 848 F.2d 926, 929 (9th Cir.1987). We review for abuse of discretion the bankruptcy court's decision not to vacate its first order appointing the Chapter 11 trustee. Cf. Northern Alaska Envtl. Center v. Lujan, 961 F.2d 886, 889 (9th Cir.1992) (reviewing denial of motion to reconsider for abuse of discretion). We affirm.
 
 
 4
 * On July 21, 1987, San Joaquin Beef filed a petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. On May 2, 1988, the bankruptcy judge signed, and the clerk filed, an order appointing Steven Diebert as the Chapter 11 trustee. The order was entered on the docket on May 4, 1988. On May 13, 1988, the bankruptcy court clerk's office issued a computer-generated document entitled "Order Appointing Trustee" which named Diebert as the trustee.
 
 
 5
 On May 30, 1989, the bankruptcy judge converted the proceeding from a Chapter 11 proceeding to a Chapter 7 proceeding. The bankruptcy court initially appointed Diebert interim Chapter 7 trustee but later appointed Ford trustee.
 
 
 6
 On May 3, 1990, Ford in his capacity as trustee filed an adversary proceeding against the FDIC to recover $10,345.08 in allegedly preferential transfers received by the FDIC from San Joaquin Roast Beef, the debtor.[1] The bankruptcy court dismissed the proceeding on the ground that it was barred by 11 U.S.C. § 546(a)'s two-year statute of limitations. Ford timely appeals.
 
 II
 
 7
 Ford contends that 11 U.S.C. § 546(a)'s two-year statute of limitations began to run anew after the conversion of the case from a Chapter 11 bankruptcy proceeding to a Chapter 7 bankruptcy proceeding and his appointment as the Chapter 7 trustee. Thus, he argues, the adversary proceeding filed on May 3, 1990 was filed within two years after his appointment in 1989 and is not barred by section 546(a)'s two-year statute of limitations. The FDIC responds that the statute of limitations commenced on the date of the appointment of the first trustee in the case on May 2, 1988 and that the adversary proceeding thus was barred by the statute of limitations.
 
 Section 546(a) provides that
 
 8
 [a]n action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--
 
 
 9
 (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or
 
 
 10
 (2) the time the case is closed or dismissed.
 
 
 11
 Ford agrees that section 546(a) provides that a trustee appointed under one chapter has two years to file an action but argues that a successor trustee appointed under another chapter also has two years to file an action. The FDIC responds that the statute provides that the first trustee, whether appointed under Chapter 7, 11, or 13, has two years to file an action, and all subsequent trustees are subject to the same two-year statute of limitations, regardless of what chapter they are appointed under.
 
 
 12
 We agree with the FDIC that the most logical interpretation of section 546(a) is that the statute of limitations begins running from the date the first trustee is appointed and that all subsequent trustees are subject to the same statute of limitations. This result makes sense given the policy that underlies all statutes of limitations: prevention of the bringing of overly stale claims. See United States v. Kubrick, 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979); Stuart v. Pingree (In re Afco Dev. Corp.), 65 B.R. 781, 785 (Bankr.D.Utah 1986).
 
 
 13
 Ford argues, however, that because trustees appointed under different chapters of the bankruptcy code have different objectives, the statute of limitations should begin running anew after the conversion of a case from one chapter to another and appointment of a new trustee. See In re Afco Dev. Corp., 65 B.R. at 786. For example, he argues, the purpose of a Chapter 11 reorganization is the "salvage and rehabilitation of a financially distressed business, not necessarily ... [the] recover[y of] voidable transfers." See id. In contrast, he asserts, once a Chapter 11 proceeding is converted to a Chapter 7 liquidation proceeding, the trustee must maximize and protect the value of the debtor's estate.
 
 
 14
 This argument has some appeal. Given that the Chapter 11 trustee or debtor in possession must exercise considerable "discretion, judgment, diplomacy and creativity" to formulate and negotiate a plan of reorganization that the creditors will approve, it may be that filing an adversary proceeding to recover preferences might not be the best strategy in a Chapter 11 proceeding. See id. (Chapter 11 trustee may not have to litigate preference actions in every case; they may be dealt with by offsetting the creditor's preference against the dividend paid under the plan, or they may be settled or abandoned). In contrast, a Chapter 7 trustee might take a more aggressive stance than a Chapter 11 trustee to try to recover more money for the debtor's estate. Given the extensive duties of a Chapter 7 trustee and the different objectives of different bankruptcy chapters, other courts have been persuaded that a Chapter 7 trustee should not be barred from exercising avoiding powers due to inaction by an earlier Chapter 11 trustee or debtor in possession. Thus, they have held that section 546(a)'s statute of limitations begins anew following conversion of a proceeding from one chapter to another and appointment of a new trustee. See id.; accord Amazing Enters. v. Jobin (In re M & L Business Mach., Inc.), 153 B.R. 308, 310-11 (D.Colo.1993) (collecting cases); Pongetti v. Lee (In re Bingham Sys., Inc.), 139 B.R. 809, 812 (Bankr.N.D.Miss.1991) (collecting cases); Nichols v. Wood (In re Wood), 113 B.R. 253, 254-55 (S.D.Miss.1990) (conversion of Chapter 13 proceeding to Chapter 7 proceeding); Zeisler v. Connecticut Bank & Trust Co. (In re Grambling), 85 B.R. 675, 676-77 (Bankr.D.Conn.1988).
 
 
 15
 We are not persuaded. We decline to interpret section 546(a) to accommodate our views on whether a Chapter 7 trustee should be barred from exercising avoiding powers due to inaction by an earlier Chapter 11 trustee. Perhaps, as Ford argues, they should not be barred, or perhaps, as the FDIC argues, trustees exercise their avoiding powers in similar ways, regardless of the chapter they are appointed under. Either way, the issue is laden with policy considerations best left to Congress.
 
 
 16
 A plain reading of section 546(a) is that the two-year statute of limitations begins running from the date the first trustee is appointed and that all subsequent trustees are subject to the same two-year statute of limitations. In this case, then, the statute of limitations began running on the date the Chapter 11 trustee was appointed.
 
 III
 
 17
 Ford contends alternatively that his action filed on May 3, 1990 was timely because it was filed within two years of May 4, 1988, the date the order appointing the Chapter 11 trustee was entered on the docket. The FDIC responds that the effective date of the appointment of the trustee was May 2, 1988, the date the order was signed.
 
 
 18
 11 U.S.C. § 546(a) provides in applicable part that a trustee must file an action within two years after the "appointment" of the trustee. In this case, our inquiry is whether the trustee was "appointed" on the date the bankruptcy court signed and filed the order or the date the order was entered on the docket.
 
 
 19
 We hold that statute of limitations begins running on the date the bankruptcy judge signs the order.
 
 
 20
 As a preliminary point, most courts agree that "appointment" under section 546(a) requires a written order by the bankruptcy judge rather than merely an oral pronouncement. See, e.g., MortgageAmerica Corp. v. American Fed. Savings & Loan (In re MortgageAmerica Corp.), 831 F.2d 97, 98 (5th Cir.1987); Knopfler v. Schraiber (In re Schraiber), 141 B.R. 1008, 1013 (Bankr.N.D.Ill.1992); Hargis v. Cone (In re Glenco Int'l Corp., Glenco Pipeline Corp.), 115 B.R. 308, 310 (Bankr.W.D.Okla.1990). Although the parties do not dispute the necessity of a written order, the cases are relevant because the requirement of a writing promotes the "policy [behind the statute of limitations] of providing litigants with certainty in regard to the time periods in which actions can be prosecuted." In re MortgageAmerica Corp., 831 F.2d at 98.
 
 
 21
 The corollary to this principle is that the writing itself, rather than the entry of the order, gives ample notice of when the limitations period begins and ends. See In re Schraiber, 141 B.R. at 1013 (citing In re MortgageAmerica Corp., 831 F.2d at 99). Thus, the Fifth Circuit has upheld a bankruptcy court's written order appointing a Chapter 11 trustee retroactively as of the date of a prior oral appointment because the later written order made clear the effective date of the appointment and thus fulfilled the policy of providing certainty to litigants regarding the limitations period. See In re MortgageAmerica Corp., 831 F.2d at 99 (later written order must make clear the effective date and cannot unduly prejudice the trustee by, for example, providing an inadequate time to investigate and bring a complaint). Similarly, in this case, the order appointing the trustee was dated and filed on May 2, 1988 and thus gave clear notice of the effective date of the appointment.
 
 
 22
 Ford nevertheless argues that the order should be effective when entered because it is a judgment, which is effective (and appealable) only when entered. See Fed.R.Civ.P. 58 (separate judgment rule); Fed.R.Civ.P. 79(a). He also argues that the time between the date an order is signed and the date it is entered on the docket is short. Thus, he concludes, using the date of entry, rather than the date the order is signed, would promote certainty as to the date the statute of limitations starts running and would be consistent with the entry of judgment rules governing notices of appeal. See Chapman v. Cardell Cabinets, Inc. (In re Nash Phillips/Copus-Houston, Inc.), 114 B.R. 466, 471-27 (Bankr.W.D.Tex.) (holding that statute of limitations starts running upon entry of the order appointing the trustee, rather than on the date the order is signed), order entered, 4 Tex.Bankr.Ct.Rep. 223 (Bankr.W.D.Tex.1990).[2]
 
 
 23
 We disagree that the uncontested appointment of the Chapter 11 trustee in this case required entry of judgment to be effective. See In re Schraiber, 141 B.R. at 1014 (uncontested order appointing Chapter 11 trustee not appealable and entry of separate judgment rule not applicable); cf. In re Plaza Diego, 911 F.2d 820 at 826 (order appointing Chapter 11 trustee over the objection of the U.S. Trustee is appealable).
 
 
 24
 Moreover, entry of a separate judgment for purposes of appeal is important to promote certainty as to the relatively short time that a party has to appeal a final order. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 384-85, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978) (per curiam); Beaudry Motor Co. v. Abko Properties, Inc., 780 F.2d 751, 755 n. 3 (9th Cir.) (discussing inequities that result when party is denied opportunity to appeal because of confusion as to which of several docket entries started the appeal period running), cert. denied, 479 U.S. 825, 107 S.Ct. 100, 93 L.Ed.2d 51 (1986); cf. Noli v. Commissioner, 860 F.2d 1521, 1525 (9th Cir.1988) (bankruptcy court's oral order granting relief from automatic stay was binding notwithstanding the court's failure to enter it on the docket; rejected argument that Rule 58's entry of judgment rule should apply because "Rule 58 was intended primarily to clear up uncertainties in determining, for purposes of appellate review, when there is a final appealable judgment"). In contrast, the inequities are not as compelling in bankruptcy cases subject to a two-year statute of limitations.
 
 
 25
 Finally, bankruptcy trustees should act to protect the estate immediately upon appointment and should not wait for entry of an order. See In re Schraiber, 141 B.R. at 1013 (trustees "must act expeditiously following approval of the appointment in order to maximize and protect the estate. Trustees should not sit inactive while waiting for the approval order to be docketed, and they certainly don't in practice."). It makes sense that the "event" of appointment also should start the statute of limitations running, given that statutes of limitations generally start running upon an event that gives notice to claimants that their cause of action has accrued.
 
 
 26
 We hold that the execution of a written order adequately promotes the policy of providing certainty to parties in bankruptcy proceedings as to the limitations period during which claims can be filed. The date the order is signed also is the event that triggers action by trustees to protect the interests of the estate and thus adequately gives notice that the statute of limitations has started running. In this case, the statute of limitations began running on May 2, 1988, the date that the bankruptcy court signed and filed the order. Accordingly, Ford's adversary proceeding filed on May 3, 1990 is barred by section 546(a)'s two-year statute of limitations.
 
 IV
 
 27
 Ford contends that even if 11 U.S.C. § 546(a)'s statute of limitations started on May 2, 1988, the date the bankruptcy judge signed the order appointing the trustee, the judge should have vacated the order because the bankruptcy clerk's computer-generated "Order Appointing Trustee" dated May 13, 1988 misled him as to the date the statute of limitations started running. Thus, he concludes, the statute of limitations should have started running on May 13, 1988, and the adversary proceeding filed May 3, 1990 was timely.
 
 
 28
 Ford essentially argues that he was misled by the court, which suggests an analogy to those cases where we have applied a "unique circumstances" exception to take jurisdiction over otherwise untimely appeals. See Malone v. Avenenti, 850 F.2d 569, 574 (9th Cir.1988) (quoting United Artists Corp. v. La Cage Aux Folles, Inc., 771 F.2d 1265, 1267-70 (9th Cir.1985)).
 
 
 29
 The unique circumstances exception applies, however, only in the context of affirmative action by the district court which "lulled [the litigant] into inactivity." Malone, 850 F.2d at 574; see Barry v. Bowen, 825 F.2d 1324, 1329 (9th Cir.1987) (district court responded to government's post-judgment motion for clarification and entered an amended judgment); United Artists, 771 F.2d at 1268 (plaintiff relied on district court's erroneous grant of sixty-day extension of time to file notice of appeal). Here, the bankruptcy court cannot be said to have lulled Ford into inactivity when it issued a standard clerk's office document.
 
 
 30
 Moreover, Ford's reliance on the clerk's document was not reasonable because bankruptcy judges, not bankruptcy clerks, have the authority to appoint Chapter 11 trustees. If Ford had reviewed the docket sheet, he would have realized that an order appointing the trustee had been filed on May 2, 1988. The bankruptcy court did not abuse its discretion by denying Ford's motion to reconsider its order dismissing the case.
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 Other defendants were named, but they are not parties to this appeal
 
 
 [2]
 In re Nash Phillips cited several cases where appointment was deemed effective on the date the order was entered. 114 B.R. at 471-72 (citing Albrecht v. Robison, 36 B.R. 913, 915 (D.Utah 1983); In re MortgageAmerica Corp., 831 F.2d at 98). In these cases, however, the court was concerned with the necessity of a written, rather than an oral, order. Moreover, the orders in those cases were signed and entered on the same date. See In re MortgageAmerica Corp., 831 F.2d at 98 (written order needed, but order effective retroactive to date of oral appointment of trustee); Albrecht, 36 B.R. at 915. Thus, the cases are not helpful in resolving the signed versus entered debate