199 F.3d 1029 (9th Cir. 1999)
 In re PARMETEX, INC., d/b/a/ TRADE VENTURES, Debtor.
AVALANCHE MARITIME, LTD. and MOUNTAIN PEAK MARITIME, LTD., Plaintiffs-Appellants,
and
SEAPLACE SHIPPING LTD., Plaintiff,
v.
SUNIL PAREKH, JR.; SEVANTI PAREKH, a/k/a SUNIL PAREKH, SR.; RESHMA PAREKH; JITENDRA KAPADIA; FORENTAB INVESTMENT, LTD.; BANK OF BARODA; CALIPAR TRADING, INC.; MERPLEX, INC.; ERWIN SHUSTAK; SHUSTAK, JALIL, SANDERS & HELLER, Defendants-Appellees.
 No. 97-55671
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted February 1, 1999--Pasadena, California
Filed December 21, 1999
 
 Jeremy O. Harwood, Healy & Baillie, New York, New York, for the plaintiffs-appellants.
 Bradley E. Brook, Los Angeles, California; and Rebecca J. Winthrop, Kelley, Drye & Warren, Los Angeles, California; Jon M. Kasimov, Haight, Brown & Bonesteel, Santa Monica, California, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California; Terry J. Hatter, District Judge, Presiding. D.C. No. CV-96-01752-TJH
 Before: Melvin Brunetti, Frank J. Magill,[1] and M. Margaret McKeown, Circuit Judges.
 Opinion by Judge BRUNETTI; Partial Dissent by Judge McKeown.
 BRUNETTI, Circuit Judge:
 
 
 1
 We must decide whether the statute of limitations under the pre-1994 version of the Bankruptcy Code begins running from the date of appointment of the interim trustee or from the date of qualification of the permanent trustee.
 
 I.
 
 2
 The relevant dates in this case are as follows:
 
 
 3
 1) On April 19, 1993, Parmetex, Inc. ("Parmetex") filed a Chapter 7 bankruptcy petition.
 
 
 4
 2) On May 4, 1993, Charles Daff ("Daff") accepted his appointment as interim trustee under 11 U.S.C. S 701.
 
 
 5
 3) The meeting of creditors held pursuant to 11 U.S.C. S 341(a) was set for May 25, 1993, but did not actually occur until June 22, 1993, at which time Daff became the permanent trustee.
 
 
 6
 4) On May 25, 1995 unsecured creditors Avalanche Maritime, Ltd. and Mountain Peak Maritime, Ltd. (the "Creditors"), filed an adversary complaint in bankruptcy court to avoid allegedly fraudulent, preferential and post-petition transfers by Parmetex. The Complaint was filed against a number of parties, including Sunil Parekh, Jr., Sevanti Parekh, Reshma Parekh, Jitendra Kapadia, Bank of Baroda and Calipar Trading, Inc., Shustak, Jalil, Sanders & Heller (a law firm), and Erwin Shustak (collectively, "Defendants").
 
 
 7
 5) On July 27, 1995 Daff executed a stipulation that authorized the Creditors to pursue the claims in his stead and to amend the original complaint to add Daff as a plaintiff.
 
 
 8
 6) On August 3, 1995, the Bankruptcy Court entered an order granting the stipulation.
 
 
 9
 7) On September 25, 1995, the Creditors and Daff filed an amended complaint with the same allegations.
 
 
 10
 Defendants have argued below and to this Court that the Creditors do not have standing to bring this suit and that in the alternative the Creditors are barred from bringing the suit by the applicable statute of limitations -11 U.S.C.S 546(a). The district court, after reviewing an appeal from the bankruptcy court, held that the two-year statute of limitations began to accrue when Daff was appointed as interim trustee and therefore dismissed the avoidance action as untimely. Neither the bankruptcy court nor the district court addressed the issue of standing.
 
 
 11
 We conclude herein that the Creditors had standing but that they were barred from bringing the suit by the statute of limitations.
 
 II.
 
 12
 Defendants argue that the Creditors have no standing to sue because only the Chapter 7 trustee has authority to bring adversary proceedings under 11 U.S.C. SS 544(b), 547, 548 and 549(a). The district court did not address the issue of standing because the statute of limitations issue was the only one certified by the bankruptcy court for appeal. Even so, we must address the issue of standing because "Article III standing is a jurisdictional prerequisite." Maricopa-Stanfield Irrigation and Drainage District v. United States, 158 F.3d 428, 433 (9th Cir. 1998).
 
 
 13
 Daff stipulated on July 27, 1995 that the Creditors were authorized to pursue their claims in his stead. In relevant part, the stipulation states: "It is hereby stipulated and agreed . . . that [the Creditors] are and were authorized to file an adversary complaint in the above referenced action on or about May 25, 1995." The stipulation further provides: "[t]he complaint . . . is acknowledged and agreed to have beenbrought on behalf of the estate although nominally on behalf of the named plaintiffs in lieu of the trustee. The Trustee authorizes the complaint to be amended if necessary to have the Trustee as a named party-plaintiff if procedurally required." On August 3, 1995, the bankruptcy court entered an order granting the stipulation. On September 25, 1995, the Creditors and Daff filed an amended complaint that added Daff as a plaintiff but stated the same claims.
 
 
 14
 Although Defendants are correct that a trustee must generally file an avoidance action under Chapter 7, we hold that under these particular circumstances -where the trustee stipulated that the Creditors could sue on his behalf and the bankruptcy court approved that stipulation -the Creditors had standing to bring the suit. See In re Curry and Sorensen, 57 B.R. 824, 828 (B.A.P. 9th Cir. 1986) ("[t]he exclusive power to commence avoidance actions vested in trustees and debtors-in possession is permissive rather than mandatory . . . [T]he creditor may move to . . . gain court permission to institute the action itself."). See also In re Enserv Co., Inc., 64 B.R. 519 (B.A.P. 9th Cir. 1986) (following In re Curry), aff'd by mem., 813 F.2d 1230 (9th Cir. 1987); In re The Gibson Group, Inc., 66 F.3d 1436, 1442 (6th Cir. 1995) ("a creditor may have standing to file an avoidance action if the bankruptcy court determines that certain conditions exist and certain prerequisites are met"); In re Natchez Corp. of West Virginia, 953 F.2d 184, 187 (5th Cir. 1992) ("A creditor may [institute an action under section 549] on behalf of the trustee or debtor-in-possession if it has moved the bankruptcy court for authorization to do so"); In re Xonics Photochemical, Inc., 841 F.2d 198, 203 (7th Cir. 1988) (creditor could have asked the bankruptcy court to allow it to bring a form of derivative suit in the name of the debtor); In re Vogel Van & Storage, Inc., 210 B.R. 27 (N.D. N.Y. 1997) (upholding bankruptcy court's authorization of suit by creditor because "nothing in the Bankruptcy Code indicates that a trustee cannot authorize a creditor to litigate an avoidance action on the trustee's behalf").
 
 III.
 
 15
 Defendants argue that the Creditors were barred from bringing a lawsuit because the applicable statute of limitations -11 U.S.C. S 546(a)[2] -had run. Specifically, Creditors contend that the S 546 statute begins to run on the date of qualification of the permanent trustee under 11 U.S.C. S 702, not from the date of appointment of the interim trustee under 11 U.S.C. S 701. We disagree with Creditors' argument and hold that the S 546(a) statute of limitations begins to run on the date the interim trustee is appointed pursuant to S 701 of the Bankruptcy Code.
 
 
 16
 11 U.S.C. S 546(a), entitled "Limitations on Avoiding Powers", provides in relevant part:
 
 
 17
 (a) an action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of --
 
 
 18
 (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302 or 1202 of this title; or
 
 
 19
 (2) the time the case is closed or dismissed.
 
 
 20
 11 U.S.C. S 546(a) (1994 ed.) (emphasis added).
 
 
 21
 The parties in this case have argued over whether the phrase "appointment of a trustee" refers to an interim trustee or a permanent trustee. The Defendants contend that the "appointment of a trustee" language refers to the "appointment" of an interim trustee under 11 U.S.C. S 701. See 11 U.S.C. S 701(a)(1) ("[t]he United States trustee shall appoint one disinterested person . . . to serve as interim trusteein the case."). If this is the case, the Complaint was not timely filed because the interim trustee was appointed on May 4, 1993, which is more than two years before the Creditors filed suit.[3] The Creditors counter that "appointment of a trustee" refers to the "election" of a permanent trustee under 11 U.S.C. S 702(b). See 11 U.S.C. S 702(b) ("[c]reditors may elect one person to serve as trustee in the case"). According to the Creditors [and according to the dissent],S 546 must refer to the qualification of a permanent trustee under S 702 because the statute explicitly references S 702. Also, argue the Creditors, a large number of lower court opinions support such an interpretation of S 546(a). Despite lower court opinions that employ such reasoning, we hold today that the S 546(a) statute of limitations begins to run upon the appointment of the interim trustee under S 701, not upon the election of a permanent trustee under S 702. Such a result is dictated by two prior decisions of this court -In re. San Joaquin Roast Beef, 7 F.3d 1413 (9th Cir. 1993); and In re. Softwaire Centre International, Inc., 994 F.2d 682 (9th Cir. 1993).
 
 
 22
 In San Joaquin Roast Beef, debtor San Joaquin Roast Beef filed for Chapter 11 bankruptcy and the bankruptcy court appointed a Chapter 11 trustee. Approximately one year later, the bankruptcy court converted the Chapter 11 to Chapter 7 and appointed a Chapter 7 trustee. Approximately one year after that, the Chapter 7 trustee filed suit to recover allegedly preferential transfers. The bankruptcy court dismissed the proceeding on the ground that it was barred by S 546(a)'s twoyear statute of limitations. San Joaquin Roast Beef, 7 F.3d at 1414-1415. The trustee contended on appeal that he was not barred by the statute of limitations because the two-year period began to run anew after the conversion of the case from a chapter 11 bankruptcy proceeding to a Chapter 7 proceeding.
 
 
 23
 We disagreed with the trustee's argument, and held that "the most logical interpretation of section 546(a) is that the statute of limitations begins running from the date the first trustee is appointed and that all subsequent trustees are subject to the same statute of limitations." Id . at 1415 (emphasis added). We therefore concluded that "[t]he statute of limitations began running on the date the Chapter 11 trustee was appointed." Id. at 1416.
 
 
 24
 The Chapter 7 trustee had argued that the statute of limitations should run anew upon conversion from Chapter 11 to Chapter 7 because a Chapter 7 trustee has different objectives than a Chapter 11 trustee. As the trustee pointed out, a Chapter 11 trustee has the goal of rehabilitating the debtor business, while the Chapter 7 has the goal of liquidating the business at its maximum value. As a result, argued the trustee, a Chapter 7 trustee could be time-barred from instituting adversary actions due to the inaction of a prior Chapter 11 trustee. Id. at 1415-1416. We expressed the view that reaching such an argument would be unwise because "the issue is laden with policy considerations best left to Congress." Id. at 1416. Instead of delving into policy arguments, we followed "[a] plain reading of S 546(a)," and reiterated that the S 546 statute of limitations begins running from the date the first trustee is appointed. Id.
 
 
 25
 In Softwaire Centre this court was presented with a slightly different scenario concerning the S 546(a) -whether or not S 546(a)'s statute of limitations applies to debtors in possession as well as trustees. In Softwaire Centre , a Chapter 11 debtor in possession, Softwaire Centre International ("SCI"), filed an action seeking an avoidance more than two years after theChapter 11 petition had been filed. Softwaire Centre, 994 F.2d at 683. SCI argued that S 546(a) should not be applied because on its face that section applies only to trustees, not to debtors in possession. Moreover, argued SCI, debtors in possession and trustees have different duties under the Bankruptcy Code and are therefore not "functional equivalents" of trustees. Applying the same statute of limitations to both, argued SCI, would "ignore[ ] the reality of reorganization." Id. 683-684.
 
 
 26
 We rejected SCI's arguments, and held that S 546(a)'s statute of limitations "was intended to apply to debtors in possession as well as trustees." Id. at 684. We adopted the reasoning of Zilkha Energy Co. v. Leighton, 920 F.2d 1520, 1523-1524, (10th Cir. 1990), which construed S 546(a) in light of section 1107(a) ("[A] debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee."). In light of this language, we stated that "[w]e do not believe that Congress intended to limit actions filed by an appointed trustee to two years without making the same restriction apply to a debtor in possession who is the functional equivalent of an appointed trustee. " Softwaire Centre, 994 F.2d at 684 (emphasis added). We concluded that the statute of limitations began to run "from the date of the filing of a petition for reorganization under Chapter 11." Id. at 683 (quoting Zilkha, 920 F.2d at 1524).
 
 
 27
 The reasoning of San Joaquin Roast Beef and Softwaire Centre lead us to the conclusion that the statute of limitations began running in this case when Daff was appointed as interim trustee pursuant to S 701, not when he was elected as permanent trustee pursuant to S 702. San Joaquin Roast Beef held that the appointment of the first trustee triggers the statute of limitations. See San Joaquin Roast Beef , 7 F.3d at 1416. Here, the first trustee appointed was Daff, who was appointed as interim trustee, on May 4, 1993. Softwaire Centre held that a debtor in possession is "the functional equivalent of an appointed trustee" and that, as a result, the S 546(a) statute of limitations applies to debtors in possession as well as to trustees. Softwaire Centre, 994 F.2d at 683-684. Similarly, in the instant case, an interim trustee appointed under S 701 is the "functional equivalent " of a permanent trustee elected under S 702. This is so because the Bankruptcy Code does not require the permanent trustee to do anything different than that which he had already been doing as the interim trustee. As one commentator has stated,"[t]he interim trustee . . . must comply with the same rules and regulations as a permanent trustee."[4] Collier on Bankruptcy P 701.04. Indeed, all Chapter 7 trustees, including the interim trustee, have the same rights, powers, and duties, including the power to assert claims governed by S 546(a)(1). Because Daff was appointed as the first trustee -serving in the capacity as interim trustee -on May 4, 1993, and because an interim trustee is the "functional equivalent" of a permanent trustee, we conclude that the S 546(a) statute of limitations began to run on May 4, 1993. Accordingly, the Creditors' suit is barred by the statute of limitations.
 
 
 28
 The dissent argues that by so holding we read specific language -"S 702" -out of the statute. Although S 546(a) does refer to S 702 and not S 701, S 546(a) does specifically refer to the "appointment" of trustees under certain sections of Chapters 7, 11, and 13 of the Bankruptcy Code. See 11 U.S.C. S 546. Section 701 is the only part of Chapter 7 that discusses the "appointment" of Chapter 7 trustees. By adopting the dissent's interpretation, therefore, we would also be reading specific language -"appointed under " -out of the statute. Given that either interpretation would read language out of this unclear statute, we have simply discerned the most logical reading of S 546(a) that is consistent with our prior decisions in San Joaquin Roast Beef and Softwaire Centre.
 
 
 29
 The dissent also argues that the 1994 amendments to the Bankruptcy Code support a contrary interpretation ofS 546 because those amendments add the phrase "or election" to the statute. The amended statute, however, does not clear up the prior ambiguity. The amended statute reads, in relevant part:
 
 
 30
 (a) An action or proceeding under section 544, 545, 547, 548, or 533 of this title may not be commenced after the earlier of . . .
 
 
 31
 (1) the later of . . .
 
 
 32
 (A) 2 years after the entry of the order for relief; or
 
 
 33
 (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202 or 1302 of this title if such election occurs before the expiration of the time specified in subparagraph (A); or
 
 
 34
 (2) the time the case is closed or dismissed.
 
 
 35
 11 U.S.C. S 546 (amended) (emphasis added). Although the added phrase "or election," could suggest that the unamended S 546(a) applies to only the permanent trustee, the statute also now contains the phrase "first trustee." The added "first trustee" language suggests that the statute of limitations should be applied to the interim trustee because the interim trustee is the "first trustee." These contradictory changes do not help to clear up the confusion present in the unamended version of S 546(a).
 
 IV.
 
 36
 The most logical interpretation of 11 U.S.C. S 546(a), consistent with this court's prior decisions, is that the statute of limitations period begins to run when the interim trustee is appointed under 11 U.S.C. S 701. The statute of limitations here, accordingly, began to run on May 4, 1993, the date that Daff was appointed as interim trustee. Because the Creditors' suit was filed more than two years after this date, it was untimely.
 
 
 37
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Hon. Frank J. Magill, United States Circuit Judge for the Eighth Circuit, sitting by designation.
 
 
 [2]
 Because Parmetex's petition for relief was filed before the 1994 amendments to the Bankruptcy Code, 11 U.S.C. S 546(a) (1994 ed.) applies to this appeal. Unless otherwise noted, all references herein are to the pre-1994 version of the statute.
 
 
 [3]
 This is so whether or not the action was "commenced" on the date the original complaint was filed -May 25, 1995, or on the date that the bankruptcy court entered the order granting the stipulation to add trustee Daff to the Complaint -August 3, 1995. Because the Creditors filed late measuring from either date, we need not decide the issue of when precisely the action was "commenced."
 
 
 
 38
 McKEOWN, Circuit Judge, concurring in part and dissenting in part:
 
 
 39
 In this issue of first impression before the Ninth Circuit, the clear language of the statute, 11 U.S.C. S 546(a) (1994),[1] mandates that the limitations period begins to run at the time of appointment of the permanent trustee under S 702. The statute says nothing about S 701 (interim trustee) and neither should we--to do so is to rewrite the statute. While I agree that the unsecured creditors had standing to pursue these claims, I respectfully disagree with the majority's conclusion that those claims are time-barred because the statute of limitations begins to run upon appointment of an interim trustee under S 701.
 
 
 40
 As the Supreme Court reminded us in interpreting the Bankruptcy Code in United States v. Ron Pair Enterprises, Inc., [t]he task of resolving the dispute over the meaning of [the bankruptcy statute] begins where all such inquiries must begin: with the language of the statute itself. In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms."
 
 
 41
 489 U.S. 235, 241 (1988) (citations omitted). Here, too, a plain reading of the statute should end the inquiry. Section 546(a) expressly states that the statute of limitations commences when a trustee under S 702, not S 701, takes office:
 
 
 42
 (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302 or 1202 of this title; or
 
 
 43
 (2) the time the case is closed or dismissed.
 
 
 44
 11 U.S.C. S 546(a) (emphasis added).
 
 
 45
 The majority's holding ignores the explicit reference to S 702 and instead reads S 701 into the statute. Under the majority's analysis, the statute would now read:
 
 
 46
 two years after the appointment of a trustee under 701, 702, 1104, 1163, 1302 or 1202 . . . .
 
 
 47
 This wholesale revision of the statute through insertion of an additional, specific statutory reference runs contrary to basic rules of statutory construction. Expresso unius est exclusio alterius. The statute is unambiguous and needs no judicial flourishes for interpretation.
 
 
 48
 No other circuit court has directly addressed this issue[2]. The Ninth Circuit Bankruptcy Appellate Panel and virtually every district and bankruptcy court faced with the issue have rejected the majority's view[3]. Two leading bankruptcy treatises are in accord. See 3 William L. Norton, Jr., Norton Bankruptcy Law and Practice, S 56:1 (2d ed. 1996) ("Since the appointment of an interim trustee under S 701 is not mentioned within Code S 546(a), it should be clear that a permanent appointment was intended."); 5 Lawrence P. King, Collier on Bankruptcy, P 546.02[2][a] (15th ed. 1999) ("Subparagraph (B) [of S 546(a)(1) as amended] refers only to appointment or election of a trustee under S 702 and not to S 701.").
 
 
 49
 The purpose of a statute of limitations is to cabin the period of time that a party is at risk of suit. On the flip side, the statute defines the period in which a party must commence suit. In the case of a proceeding under Chapter 7, the suit must be commenced no more than "two years after the appointment of a trustee under section 702 . . . ." 11 U.S.C.S 546(a). Instead of focusing on the statute's clear trigger point for initiation of the two-year period, the majority instead engages in a discussion of whether a S 701 interim trustee is the "functional equivalent" of a S 702 permanent trustee. Even if that were the case, which I do not concede, it is irrelevant. The statute says nothing about S 701 and the clear trigger is the qualification of a permanent trustee under S 702. Functional equivalency analysis has no role in the interpretation of this unambiguous statute.
 
 
 50
 Not only does the statute dictate this result, it is also a practical outcome. Although interim trustees usually become permanent trustees, it is not true in every case. Either substantive or schedulingconflicts may preclude service as aS 702 trustee, or the creditors may vote for a different permanent trustee, or there may be a dispute over appointment of the trustee. As a practical matter, the interim trustee is a temporary caretaker. See In re Lucas Dallas, 185 B.R. at 805.
 
 
 51
 The majority overlooks the importance of the meeting of creditors pursuant to 11 U.S.C. S 341 as a distinguishing factor between S 701 interim trustees and S 702 permanent trustees. At the S 341 meeting, the permanent trustee is determined either through an election by the creditors or, if no election is held, by automatically making the interim trustee the permanent trustee. See 11 U.S.C. S 702(c)-(d). As trustee elections are relatively rare, a key purpose of the meeting is to examine the debtor. See 3 Collier at P 341.01; 5 Collier at P 546.02(2)(a)(i). This examination under oath enables "creditors and the trustee to determine if assets have improperly been disposed [of] or concealed." In re Conco Bldg. Supplies, 102 B.R. at 192 (quoting legislative history of 11 U.S.C. S 343, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 332 (1977)). It is no accident that this investigative kick-off, which is contemporaneous with the designation of the permanent trustee under S 702, triggers the statute of limitations. As such, courts and commentators underscore the significance of the S 341 meeting as the logical starting point for the statute of limitations under S 546[4].
 
 
 52
 Although the majority claims to discern "the most logical reading of S 546(a) that is consistent" with Ford v. Union Bank (In re San Joaquin Roast Beef), 7 F.3d 1413 (9th Cir. 1993), and Upgrade Corporation v. Government Technology Services, Inc. (In re Softwaire Centre International, Inc.), 994 F.2d 682 (9th Cir. 1993), the problem is that those cases are not on point, let alone controlling precedent. Neither case addressed the issue of whether, in an original Chapter 7 proceeding, the statute of limitations begins running when a S 701 interim trustee takes office. Instead, those cases involved Chapter 11 trustees and debtors in possession, not S 701 interim trustees.
 
 
 53
 San Joaquin Roast Beef arose in the context of a conversion from Chapter 11 to Chapter 7, a wholly inapposite circumstance. We considered whether a trustee appointed under S 1104, a section specified in S 546(a), triggered the statute of limitations or whether the statute began to run anew upon conversion to Chapter 7. The majority takes out of context San Joaquin Roast Beef's statement that the statute of limitations in S 546(a) commences on "the date the first trustee is appointed," to support its position that the limitations period begins upon appointment of the S 701 trustee as the "first trustee." San Joaquin Roast Beef did not address the interplay between S 701 and S 702. The majority's extension of San Joaquin Roast Beef's language nullifies the express inclusion of S 702 in S 546(a). Every original Chapter 7 case starts with an interim trustee under S 701 who is then succeeded by a S 702 trustee. 11 U.S.C. S 701. If election of a S 701 interim trustee were the trigger, what would be the point of including S 702 in the statute? Just as we professed in San Joaquin Roast Beef to leave policy considerations to Congress and to follow a plain reading of the statute (7 F.3d at 1416), we should leave well enough alone here.
 
 
 54
 The other case relied on by the majority, Softwaire Centre, is neither controlling nor instructive, as it involved a totally different issue--a debtor in possession under Chapter 11. Although the majority attempts to extrapolate Softwaire Centre's "functional equivalency" approach to this Chapter 7 case, analogy is no substitute for the clear statutory language.
 
 
 55
 Nor am I persuaded by the majority's logic that an exclusion of S 701 from S 546(a) would somehow read the term "appointment" out of the statute. The majority intimates that because S 702 uses the term "election" rather than "appointment" of a permanent trustee, "appointment" must therefore refer to the S 701 interim trustee. "Appointment" is a broad, generic term which, in this context, means designation of the trustee. Reading "appointment" to encompass both the concept of "election" of a trustee under S 702(c), as well as the default selection of the interim trustee as the permanent trustee under S 702(d), is a common sense application of the English language.[5] See BLACK'S LAW DICTIONARY 99 (6th ed. 1990) (defining "appointment" as "[t]he designation of a person, by the person or persons having authority therefor, to discharge the duties of some office or trust").[6] To suggest, as the majority does, that ambiguity in the term "appointment" opens the door to rewriting the statute to include S 701 turns the plain meaning doctrine on its head.
 
 
 56
 Because the majority's holding is at odds with a plain reading of S 546(a), I respectfully dissent.
 
 
 
 Notes:
 
 
 [1]
 Congress amended 11 U.S.C. S 546(a) in 1994, but did not add S 701 to the statute. Unless otherwise noted, all statutory references are to the pre-1994 version of Title 11 of the U.S. Code.
 
 
 [2]
 In dicta, the Fourth Circuit stated that, in a Chapter 7 proceeding, the selection of a permanent trustee under S 702 is the starting point for the statute of limitations. See Maurice Sporting Goods, Inc. v. Maxway Corp. (In re Maxway Corp.), 27 F.3d 980, 984 (4th Cir. 1994) (holding in a Chapter 11 case that statute of limitations "does not begin to run until the appointment of one of the trustees specified inS546(a)(1)" but noting in dicta that in a Chapter 7 proceeding, the statute of limitations "does not begin to run until a permanent trustee is selected pursuant to 11 U.S.C.A. S 702").
 
 
 [3]
 See, e.g., General Electric Capital Auto Lease, Inc. v. Broach (In re Lucas Dallas, Inc.), 185 B.R. 801, 805-06 (B.A.P. 9th Cir. 1995); Kroh v. T.R.M. Mfg. (In re Conco Bldg. Supplies, Inc.) , 102 B.R. 190, 192 (B.A.P. 9th Cir. 1989); Mendelsohn v. Sequa Financial Corp. (In re Frank Santora Equip. Corp.), 231 B.R. 486, 492 (E.D.N.Y. 1999); Hirsch v. Union Trust Co. (In re Colonial Realty Co. ), 229 B.R. 567, 572 (Bankr. D. Conn. 1999); Compass Bank v. Reynolds, 1996 WL 673618, at *3 (N.D. Ala. 1996); Huennekens v. Greene (In re Francis R. Dove), 199 B.R. 342, 347 (Bankr. E.D. Va. 1996); Damir v. Trans-Pacific Nat'l Bank (In re Raymond Kong et al.), 196 B.R. 167, 170 (N.D. Cal. 1996); Seals v. Abedi (In re Fort Worth Campbell & Assoc., Inc.), 182 B.R. 748, 750 (Bankr. N.D. Tex. 1995); Field v. Montgomery County, Md. (In re Anton Motors, Inc.), 177 B.R. 58, 60-61 (Bankr. D. Md. 1995); Styler v. Conoco, Inc. (In re Peterson Distributing, Inc.), 176 B.R. 584, 590 (Bankr. D. Utah 1995); Govaert v. Anagnos (In re Kendall Meat Imports, Inc.), 176 B.R. 80, 81 (Bankr. S.D. Fla. 1994); Biggs v. Biljo, Inc. (In re Goetz), 175 B.R. 743, 746 (Bankr. C.D. Cal. 1994).
 
 
 [4]
 See, e.g., In re Lucas Dallas, 185 B.R. at 805-06; In re Art & Co., 179 B.R. at 759-60; Varalli v. PTL Intermodal (In re Metro Shippers, Inc.), 95 B.R. 366, 368 (Bankr. E.D. Pa. 1989); 5 Collier at P 546.02(2)(a)(i) ("[T]he date of the section 341 meeting usually will be the date of appointment of the trustee for purposes of section 546(a)[as amended].").
 
 
 [5]
 Indeed, when Congress amendedS 546(a) in 1994, it added the phrase "or election of the first trustee" after the term "appointment," and maintained the express reference to S 702, while declining to add a reference to the interim trustee under S 701. See 11 U.S.C. S 546(a) (1997). These amendments indicate that Congress intended that the statute of limitations begin running upon designation of the S 702 trustee. See United States v. Monroe, 943 F.2d 1007, 1016 (9th Cir. 1991) (subsequent clarifying amendment "though not controlling, [is] entitled to substantial weight in construing the earlier law") (citations omitted). The majority's suggestion that use of the "first trustee" language somehow sweeps in S 701, even though that section is never mentioned, stretches the limits of statutory construction.
 
 
 [6]
 See also In re Lucas Dallas, 185 B.R. at 806 n.5; cf. McPherson v. Blacker, 146 U.S. 1, 27 (1892) (the word " `appoint' . . . is sufficiently comprehensive to cover that mode [election], and was manifestly used as conveying the broadest power of determination"); Wagner v. City of San Angelo, 546 S.W.2d 378, 379 (Tex. Civ. App. 1977) ("[T]he word `appointment' . . . encompass[es] election as well as appointment. As a matter of fact, the term `appointment' appears to be used in this section as a more comprehensive term, to convey the idea of a mode of constituting or designating the head of the department whether selected by appointment, election, or otherwise.").