In re: Ken MIZUNO, Debtor.

**Duke Salisbury, Trustee, Plaintiff–Appellee,**

v.

**Mirage Resorts, Inc.; Mirage Hotel–Casino; The Golden Nugget Casino Inc., Defendants–Appellants.**

No. 99–55237.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 2000

Filed Sept. 11, 2000

---

Barry B. Langberg, Gregory A. Bray, Deborah Drooz, Stroock & Stroock & Lavan LLP for appellants Mirage Resorts, Inc., Mirage Hotel–Casino, and The Golden Nugget Casino Inc.

James J. Feder, John W. Mills, Feder & Mills Professional Corporation, Patrick E. Hoog for appellees Duke Salisbury, Chapter 11 Trustee.

Before: FERNANDEZ, WARDLAW, Circuit Judges, and WEINER,[1] Senior District Judge.

WEINER, Senior District Judge:

## I.

This appeal arises out of the extensively litigated bankruptcy of Ken Mizuno, a Japanese land developer who defrauded thousands of Japanese investors in a golf course and country club development, and used some of the money to pay gambling debts and make preferential transfers in the United States. Mirage Resorts, Inc., Mirage Hotel–Casino, and Golden Nugget Casino, Inc. (collectively Mirage) appeal from an order of the District Court reinstating the adversary proceeding instituted against them by the Chapter 11 Trustee Duke Salisbury. The Bankruptcy Court had determined that the adversary proceeding was barred by the applicable statute of limitations. Salisbury appealed and the District Court reversed, finding that the action was timely filed. We have jurisdiction over the appeal under 28 U.S.C. §§ 158(d) and 1291. We affirm.

## II.

The history of Mizuno's bankruptcy proceedings is somewhat complicated, but

1. Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

necessary to an understanding of the central issue in this appeal. On October 14, 1991, Mizuno's Japanese tort claimants filed an involuntary bankruptcy action against him in Japan. On April 28, 1992, Kengo Ohashi, one of Mizuno's creditors, was appointed by the Japanese court to be administrator of Mizuno's personal bankruptcy and that of his affiliated company, Ken International. On June 9, 1992, acting under the authority given him by the Japanese court, Ohashi filed an involuntary Chapter 11 petition against Mizuno in the United States Bankruptcy Court for the Central District of California. He also filed an answer to the petition on Mizuno's behalf, admitting insolvency and consenting to the order for relief. From that time until the appointment of Salisbury as trustee, Ohashi exercised control over the debtor's property, and was treated by the bankruptcy judge as, alternately, the debtor, a debtor-in-possession, or a de facto trustee.

On November 30, 1995, in a separate appeal of an action to enforce the automatic stay against Mizuno, the district court determined on a motion made by Mizuno, that Ohashi was neither the trustee, debtor, or debtor-in-possession of the Mizuno estate and lacked any standing to bring an action in the name of the estate against Mizuno and others for violation of the automatic stay. On appeal of that order, we determined that the District Court erred in reaching the issue of whether Ohashi lacked standing because Mizuno had not appealed a prior order finding Ohashi could act as the debtor. As he had not appealed the prior order, we determined

that Mizuno was collaterally estopped from relitigating Ohashi's standing. We concluded that Ohashi had standing to initiate the action for the automatic stay violation and that Salisbury succeeded to Ohashi's interests when he was appointed trustee of the estate under 11 U.S.C. § 1104 on December 15, 1995. *Ken Mizuno Bankr. Estate v. Mizuno (In re Mizuno),* 125 F.3d 858, 1997 WL 579128 (9th Cir. Sept.17, 1997) (unpublished disposition).

The instant adversary action was filed on December 12, 1997, within two years of Salisbury's appointment as trustee, but more than two years after the filing of the involuntary petition. It has been litigated in tandem with another adversary action filed by Salisbury against MGM Dist., Inc., formerly known as the Desert Inn. As here, in the Desert Inn action the defendants argued that the adversary action was barred by the statute of limitations because it was brought more than two years after the bankruptcy commenced, even though it was within two years of Salisbury's appointment as trustee. Also as here, the primary question the Bankruptcy Court believed it had to address was whether Ohashi was acting, on the one hand, as a debtor in possession or a de facto trustee or, on the other hand, in some other capacity. If he was either the debtor in possession or a de facto trustee, Desert Inn argued the adversary action was untimely since under 11 U.S.C. § 546(a) and the cases interpreting that provision, the time period ran from the initiation of the action.[2] If he was never a debtor in possession or de facto trustee,

---

**2.** The version of § 546(a) in effect at the time of the filing of the petition for relief provided in its entirety:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or
(2) the time the case is closed or dismissed.

Following enactment of the 1994 Bankruptcy Amendments the section now provides:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
(1) the later of—
(A) 2 years after the entry of the order for relief; or
(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
(2) the time the case is closed or dismissed.

the time period would run from the time Salisbury was appointed and the lawsuit would be deemed timely.

Based upon its prior holdings in the automatic stay violation action against Mizuno, the bankruptcy court found that Ohashi was the de facto trustee of the estate and therefore, that the limitations period began to run from the filing of the bankruptcy petition because the "appointment" of Ohashi was simultaneous with the filing of the order for relief. Thus the lawsuit was untimely. In making its determination, the bankruptcy court noted Ohashi's authority from the Japanese bankruptcy court to (1) file the involuntary petition against Mizuno, (2) answer the petition on Mizuno's behalf admitting insolvency and consenting to the order for relief, and (3) exercise control over the debtor's property. The bankruptcy court went on to find that even if Ohashi was not a de facto trustee but instead a debtor in possession under § 546(a), and Duke Salisbury was the first trustee to be appointed, the time period still expired two years after commencement of the action because *John Mitchell, Inc. v. Steinbrugge (In re Hanna)*, 72 F.3d 114 (9th Cir.1995) (holding that the statute of limitations runs from the appointment of the first trustee but, if none is appointed, it runs from the establishment of the debtor in possession by the filing of the bankruptcy petition) could not be read to mean that the limitations period restarted when the Chapter 11 trustee was appointed after the initial limitations period had expired. The bankruptcy court found that Salisbury's argument, that *Hanna* announced an unambiguous rule that all trustees get two years from the date of first appointment, was mistaken. In deciding the same issue with regard to Mirage, the bankruptcy court incorporated by reference its decision in the Desert Inn case and reached the same conclusions: Ohashi was acting as a debtor in possession or de facto trustee from the outset of the bankruptcy and the statute of limitations on the claim against Mirage had lapsed since it had not been filed within two years of the filing of the initial petition for relief.

Salisbury appealed to the district court, which by minute entry of December 1, 1998, reversed the decision of the bankruptcy court and remanded for further proceedings. The district court held that, under old § 546(a), where a Chapter 11 trustee is appointed the two year limitation period restarts and the trustee gets two years from the date of his appointment to initiate adversary actions. The district court also found that Salisbury was the first Chapter 11 trustee to be appointed; regardless of what term the bankruptcy court used to describe Ohashi's status, he was never "appointed" as trustee and thus treating him as the Chapter 11 trustee for purposes of determining whether the adversary action was timely would be contrary to the plain language of old § 546(a)(1). Accordingly, the district court reversed the decision of the bankruptcy court, reinstated the adversary action, and remanded.

### III.

We have discussed the application of old § 546(a) on several occasions. In *Upgrade Corp. v. Government Technology Servs. (In re Softwaire Centre International, Inc.)*, 994 F.2d 682 (9th Cir.1993), a Chapter 11 debtor in possession filed an avoidance action more than two years after the petition was filed. In that case, no trustee had ever been appointed. In holding that § 546(a) was intended to apply to debtors in possession as well as trustees, *id.* at 684, we adopted the reasoning of *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523–24 (10th Cir.1990), which construed § 546(a) in light of 11 U.S.C. § 1107(a)'s provision that a debtor in possession "shall have all the rights ... and powers and shall perform all the functions and duties ... of a trustee." We concluded in *Softwaire Centre* that "[w]e do not believe that Congress intended to limit actions filed by an appointed trustee to two years without making the same restriction apply to a debtor-

in-possession who is the functional equivalent of an appointed trustee." *Id.* at 684.

That same year we decided *Ford v. Union Bank (In re San Joaquin Roast Beef),* 7 F.3d 1413 (9th Cir.1993). In that case, a Chapter 11 trustee had been appointed and subsequently replaced by a Chapter 7 trustee when the case was converted. The Chapter 7 trustee attempted to bring an action to recover a preferential transfer within two years of his own appointment, but beyond the second anniversary of the Chapter 11 trustee's appointment. In response to the trustee's argument that the two year period began to run anew when he was appointed, we held that "the most logical interpretation of section 546(a) is that the statute of limitations begins running from the date the first trustee is appointed and that all subsequent trustees are subject to the same statute of limitations." *Id.* at 1415.

Two years later in *Mosier v. Kroger Co. (In re IRFM, Inc.),* 65 F.3d 778 (9th Cir. 1995), we faced the situation of an avoidance action which was brought more than two years after the filing of the Chapter 11 petition by the debtor in possession, but within two years of the appointment of a Chapter 7 trustee. We held that *Softwaire Centre* and *San Joaquin Roast Beef* compelled a conclusion that the statute of limitation had begun to run when the initial Chapter 11 petition was filed. *See id.* at 780. As *Softwaire Centre* held that a Chapter 11 debtor in possession was the functional equivalent of an appointed trustee, and *San Joaquin Roast Beef* held that the limitation period does not start anew when there is a conversion to Chapter 7, "[a]dding these two cases together, the statute of limitations in the case began running on ... the date IRFM filed its Chapter 11 bankruptcy petition. The fact that IRFM's petition was subsequently converted to a Chapter 7 bankruptcy, and a Chapter 7 trustee appointed, did not start the clock ticking anew." *IRFM* at 781.

That same year we decided *Hanna,* a case where the Chapter 11 trustee brought an avoidance action more than two years after the bankruptcy petition was filed, but within two years of the trustee's appointment. We found the action to be timely, rejecting the argument that the time ran from the date the petition was filed since the debtor in possession was the functional equivalent of a trustee:

> If ... the debtor in possession is always the first trustee, then in all Chapter 11 cases, the relevant triggering event would be the date on which the debtor filed the bankruptcy petition. The date on which a Chapter 11 trustee is actually appointed would be completely irrelevant when calculating the expiration of the limitations period. [This] interpretation of our three cases reads the "appointment of a trustee" language out of the statute.

*Hanna,* 72 F.3d at 116–17. Rather, *Hanna*

> ... read *Softwaire Centre, San Joaquin Roast Beef, IRFM,* and the language of section 546(a) together to hold that whenever a Chapter 11 trustee is actually appointed under section 1104, the rule in *San Joaquin Roast ·Beef* applies, so that "the two-year statute of limitations begins running from the date the first trustee [i.e., the. Chapter 11 trustee] is appointed." However, where no actual Chapter 11 trustee is ever appointed, *Softwaire Centre* and *IRFM* apply, and the debtor in possession is the functional equivalent of a Chapter 11 trustee.

*Id.* at 117.

In *Liquidation Estate of DeLaurentiis Entertainment Group v. Technicolor, Inc. (In re DeLaurentiis Entertainment Group, Inc.),* 87 F.3d 1061 (9th Cir.1996), we addressed the situation of an action to recover a preferential transfer brought more than two years after the filing of the petition by a debtor in possession but less than two years after the creation of a Creditor's Committee to act as agent for the debtor's estate under 11 U.S.C. § 1123(b)(3)(B). We held that § 546(a), "read in conjunction with § 1107(a), af-

fords a debtor in possession two years from the filing of the bankruptcy petition to bring an avoidance action. Neither the plain language of § 546(a) nor the language of § 1104 conveys the same status on estate representatives." *Id.* at 1063–64. Accordingly, we reaffirmed the holding of *Hanna:* if no Chapter 11 trustee is ever appointed the holding of *Softwaire Centre* applies and the two year period runs from the filing of the petition. But whenever a Chapter 11 trustee is actually appointed, *San Joaquin Roast Beef* applies, "the statute of limitations *restarts,* and the trustee gets two more years from appointment.... Thus, under the pre-amended version of § 546(a), *two distinct statute of limitations periods exist for avoidance proceedings." DeLaurentiis,* 87 F.3d at 1064 (emphasis added).

Finally, our most recent case construing old § 546(a) is *Avalanche Maritime, Ltd. v. Parekh (In re Parmetex, Inc.),* 199 F.3d 1029 (9th Cir.1999), where we addressed the question of whether the trustee's limitation period begins to run upon the appointment of an interim trustee, or upon the qualification of a permanent trustee. We held that, applying the conclusions of *San Joaquin Roast Beef* that appointment of the *first* trustee triggers the statute of limitations, and *Softwaire Centre* that the functional equivalent of a trustee qualifies as a trustee for purposes of § 546, the limitation period begins to run upon the appointment of the interim trustee. *Id.* at 1033–34.

## IV.

■ Returning to the facts presented sub judice, we have an individual who is variously described by the bankruptcy court as a "de facto trustee" or a "debtor in possession," but who was never actually appointed a trustee, conducting the affairs of an estate for several years before Salisbury was actually appointed to be the Chapter 11 trustee. Ohashi's status is the key to determining whether the statute began to run: if he was a trustee, the statute began to run at the outset of the case; if he was either the debtor, a debtor

in possession or an agent of the estate, and not a trustee, under *DeLaurentiis* the statute began to run when Salisbury was appointed.

We conclude that Ohashi was never a trustee, as that term is used in § 546(a). It is clear from the record that the bankruptcy court considered him the debtor or a debtor in possession from the outset of the case. It allowed him to file the answer on Mizuno's behalf, admitting insolvency and consenting to the order for relief. It held early in the proceedings that Ohashi could act as the debtor or debtor in possession and denied Mizuno's motion to vacate the order for relief which argued that Ohashi could not act as the debtor. The bankruptcy court specifically found that Ohashi had permission to answer the involuntary petition in place of Mizuno, and Mizuno did not appeal this decision. In the later action to enforce the automatic stay against Mizuno, this court found that the district court had erred in revisiting the issue of whether Ohashi lacked standing to initiate the action for violation of the automatic stay, since Mizuno did not appeal the earlier decision. Most importantly, the bankruptcy court never ordered the appointment of a trustee under 11 U.S.C. § 1104(a), and the United States Trustee never appointed Ohashi the trustee under § 1104(d).

Whether Ohashi was, alternatively, an agent, debtor or debtor in possession is of little import, and we do not decide that issue. The determinative issue is that he was never a trustee. While the bankruptcy court, in both its Desert Inn decision and the decision in this case which incorporated Desert Inn, continuously called Ohashi a "de facto trustee" its use of that term was error. The only case cited by the bankruptcy court for the proposition that Ohashi was a "de facto trustee" was *In re Holiday Isles, Ltd.,* 29 B.R. 827 (Bankr. S.D.Fla.1983). In that case, however, there was an actual order for the appointment of co-trustees. The co-trustees never duly qualified because they failed to

post the required penal bond. *See id.* at 828–29. Nonetheless they appeared before the court and acted as trustees on numerous occasions, were reimbursed by the court from estate funds for their expenses, and filed pleadings in which they represented themselves as the trustees. *See id.* at 829. *Holiday Isles* held that those who so hold themselves out as co-trustees are estopped from contending they are not trustees as a defense to a suit brought against them based on their actions as trustees; that where such persons never qualified as de jure trustees, the court will consider them de facto trustees. *Id.* at 830.

Whether the de facto trustee theory used in *Holiday Isles* is proper or not, it would not apply here. This was not a situation where Ohashi was apparently appointed, but never technically qualified to be the Chapter 11 trustee. He merely administered the estate, being permitted by the bankruptcy court to exercise the powers of a trustee, presumably under the authority of 11 U.S.C. § 1107(a) as a debtor in possession. This does not make him a de facto trustee. Otherwise every debtor in possession would be a de facto trustee and, as we held in *Hanna*, such an interpretation "reads the 'appointment of a trustee' language out of the statute." *Id.,* 72 F.3d at 117.

 We find this case is controlled by *Hanna* and *DeLaurentiis.* As in *Hanna,* we have an action instituted more than two years after the bankruptcy petition was filed, but within two years of the trustee's appointment. The only distinguishing factor between this case and *Hanna* is the fact that the two year period running against the debtor in possession expired before the trustee was ever appointed. While Mirage argues that such a "dead" statute cannot be "revived" by the appointment of a trustee, this argument ignores our discussion in *DeLaurentiis.* In that case we held that where a Chapter 11 trustee is actually appointed, "the statute of limitation *restarts,* and the trustee gets two more years from appointment.... Thus, under the pre-amended version of § 546(a) *two distinct statute of limitations periods exist* for avoidance proceedings." *DeLaurentiis,* 87 F.3d at 1064 (emphasis added). Since the limitation period applicable to Salisbury is distinct from the one applicable to Ohashi, it is immaterial that Ohashi's two year period expired. This is not a situation where a statute is "revived." Rather, as Salisbury was the first and only trustee actually appointed, the new statute of limitation began to run on the date of his appointment, and the adversary action was timely filed.[3]

Because Salisbury's action was timely filed, we need not consider his argument that equitable tolling would save his action even if it were technically untimely.

AFFIRMED.

---

3. Mirage makes the additional argument § 546 is ambiguous and that Congress's enactment of § 216 of the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106, which amended § 546 to its current form, should guide our interpretation of the old provision. First, there is no cause to find that old § 546 is ambiguous. The mere fact that it has been construed to have different applications under different factual scenarios does not render it ambiguous. Moreover, Congress's amendment to § 546 did not declare what the former statute was intended to mean; it altered the statutory scheme adding the provision Mirage wishes was in effect at the time this action was filed. While the amendment retained the two distinct limitations periods, one running from the entry of the order for relief and a second period which runs from the appointment of the first trustee, the second period was conditioned upon the trustee being appointed before the expiration of the first two year period. In other words, the new statute contains an important provision not found in the original, that no proceeding can be brought by a trustee more than three years after the order for relief. This was clearly not the law at the time this action was filed.